**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Lisa Michelle LAMBERT, Lancaster Newspapers, Inc., and American Broadcasting Companies.**

**Appeal of American Broadcasting Companies, Inc., Intervenor.**

**Commonwealth of Pennsylvania, Appellee**

v.

**Lisa Michelle Lambert, Lancaster Newspapers, Inc., and American Broadcasting Companies.**

**Appeal of Lancaster Newspapers, Inc., Intervenor.**

Superior Court of Pennsylvania.

Argued Sept. 23, 1998.
Filed Dec. 17, 1998.

George C. Werner, Jr., Lancaster and Nathan P. Siegel, New York City, for appellants.

Before JOHNSON, HUDOCK and HESTER, JJ.

HUDOCK, J.:

In this consolidated appeal, we are asked to consider whether the trial court erred when it issued an order that limited publicity surrounding the adjudication of Lisa Michelle Lambert's PCRA petition. After review, we conclude that the order dated April 14, 1998, does not impermissibly infringe upon the First Amendment rights of the parties in this case. Accordingly, we affirm that order.

Lambert is currently serving a sentence of life imprisonment for a first-degree murder conviction in the Court of Common Pleas of Lancaster County in July 1992. The United States District Court for the Eastern District of Pennsylvania, following its review of her *habeas corpus* petition, declared that Lambert was "actually innocent" of the charges, and Lambert was ordered to be released. The Third Circuit Court of Appeals vacated the District Court's order, however, and Lambert's further appeals to the United States Supreme Court, the Pennsylvania Supreme Court, and the lower federal courts have proved to be unavailing, due to Lambert's failure to exhaust state remedies.

Consequently, Lambert filed a petition pursuant to the Post–Conviction Relief Act (PCRA),[1] as well as several other motions pertinent thereto. Following a hearing on one of the pending motions, the PCRA court *sua sponte* issued an order limiting publicity in this matter. Order, 3/6/98. After this order was issued, two newspapers, the *Intelligencer Journal* and Philadelphia Newspapers, Inc., t/a *The Philadelphia Inquirer*, as well as the American Broadcasting Company (collectively, "the Intervenors") indicated to the court that they wished to intervene and challenge this order. The PCRA court granted the Intervenors permission to intervene, and conducted a hearing. Following this hearing, the PCRA court amended the order in certain limited respects. The amended order provides:

AND NOW, this 14th day of April, 1998, for the reasons set forth above, the Order Limiting Publicity of March 6, 1998 is hereby modified. The following Order Limiting Publicity shall be effective immediately. It is hereby ORDERED:

1. Counsel for the petitioner and counsel for the Commonwealth are precluded from public comment about this case except in accordance with Rule 3.6 of the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania. A copy of Rule 3.6. is attached hereto.

2. All persons assisting or associated with counsel for the Commonwealth are precluded from making extrajudicial statements that counsel for the Commonwealth would be prohibited from making under Rule 3.6 of the Rules of Professional Conduct.

3. All persons assisting or associated with counsel for petitioner are precluded from making extrajudicial statements that counsel for petitioner would be prohibited from making under Rule 3.6 of the Rules of Professional Conduct.

4. Counsel for the Commonwealth and counsel for petitioner shall promptly make all appropriate persons assisting or associated with the prosecution or defense of this petition in this case aware of this order.

Amended Order, 4/14/98. Rule of Professional Conduct 3.6 provides:

(a) A lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materi-

---

1. 42 Pa.C.S.A. §§ 9541–46.

ally prejudicing an adjudicative proceeding.

(b) A statement referred to in paragraph (a) ordinarily is likely to have such an effect when it refers to a civil matter triable to a jury, a criminal matter, or any other proceeding that could result in incarceration, and the statement relates to:

(1) the character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness, or the identity of a witness, or the expected testimony of a party or witness;

(2) in a criminal case or proceeding that could result in incarceration, the possibility of a plea of guilty to the offense or the existence or contents of any confession, admission, or statement given by a defendant or suspect or that person's refusal or failure to make a statement;

(3) the performance or results of any examination or test or the refusal or failure of a person to submit to an examination or test, or the identity or nature of physical evidence expected to be presented;

(4) any opinion as to the guilt or innocence of a defendant or suspect in a criminal case or proceeding that could result in incarceration;

(5) information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would if disclosed create a substantial risk of prejudicing an impartial trial; or

(6) the fact that a defendant has been charged with a crime, unless there is included therein a statement explaining that the charge is merely an accusation and that the defendant is presumed innocent until and unless proven guilty.

(c) Notwithstanding paragraph (a) and (b)(1–5), a lawyer involved in the investigation or litigation of a matter may state without elaboration:

(1) the general nature of the claim or defense;

(2) the information contained in a public record;

(3) that an investigation of the matter is in progress, including the general scope of the investigation, the offense or claim or defense involved and, except when prohibited by law, the identity of the persons involved;

(4) the scheduling or result of any step in litigation;

(5) a request for assistance in obtaining evidence and information necessary thereto;

(6) a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest; and

(7) in a criminal case:

(i) the identity, residence, occupation and family status of the accused;

(ii) if the accused has not been apprehended, information necessary to aid in apprehension of that person;

(iii) the fact, time and place of arrest; and

(iv) the identity of investigating and arresting officers or agencies and the length of the investigation.

Pa. Rule of Professional Conduct 3.6.

This appeal followed.[2]

The Intervenors raise two issues on appeal, namely:

1. Whether the trial court's Order Limiting Publicity during a hearing on a Post Conviction Relief Act petition impermissiblility [sic] infringes upon First Amendment Rights?

2. Whether the trial court's Order Limiting Publicity during a hearing on a Post Conviction Relief Act petition is unconsti-

**2.** We note that this Court denied the Intervenors' motion to stay the underlying proceedings pending a resolution of this appeal on May 21, 1998. In addition, Lambert's PCRA petition has been finally adjudicated by the PCRA court. However, because the issues raised here are matters which are capable of repetition while evading appellate review, we find that the appeal is not moot and will address the merits of the order that limited publicity in this case. *See, e.g., In re Hasay*, 546 Pa. 481, 491, 686 A.2d 809, 814 (1996) (defining the exception to the mootness doctrine as an issue clearly capable of repetition yet evading appellate review).

tutionally vague, in relying upon language which the U.S. Supreme Court has previously declared to be unconstitutionally vague?

The Intervenors' Brief at 3.

■ This Court possesses jurisdiction over this appeal pursuant to the collateral order exception to the final judgment rule. The collateral order rule was first announced by the United States Supreme Court in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), was adopted by the Pennsylvania Supreme Court in *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 348 A.2d 734 (1975), and is now codified in Pennsylvania Rule of Appellate Procedure 313. The rule states: ·

A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa. R.A.P. 313(b).

The validity of the order limiting publicity imposed in this case is an issue separable from and collateral to the main cause of action, the merits of Lambert's PCRA petition. Further, the right involved, implicating the First Amendment guarantees of freedom of speech and freedom of the press, is too important to be denied review. The nature of the free speech rights involved here also ensures that the question involved in this appeal may be irreparably lost if judgment is postponed. Accordingly, we may review the merits of this appeal.

Preliminarily, we are compelled to disagree with the Intervenors' blanket characterization of the order on appeal as a "gag order." The amended order merely instructs counsel and persons assisting counsel in this case to adhere to the dictates of Pennsylvania Rule of Professional Conduct 3.6. Attorneys are always subject to the ethical obli-

gations set forth in this Rule [3]; no additional restrictions are imposed by the trial court's order. We note that all violators of the Rules of Professional Conduct are subject to the possibility of disciplinary action. Court orders, on the other hand, are enforced by the court's contempt powers. Thus, the order in question is a more immediate method of enforcing the ethical obligations imposed by the Rules. Nevertheless, the characterization of the order as a "gag order" does not affect our review. Our task on appeal is to determine whether Rule 3.6 may be constitutionally applied to limit publicity in this case.

■ The Intervenors argue that the order limiting publicity impermissibly infringes upon their rights to free speech and freedom of the press as guaranteed by the First Amendment to the United States Constitution.[4] In cases involving free speech rights and criminal trials, the constitutional guarantees of the First and Sixth Amendments of the United States Constitution become intertwined. The United States Supreme Court explained the competing concerns in such a case more than thirty years ago:

Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused. And appellate tribunals have the duty to make an independent evaluation of the circumstances. Of course, there is nothing that proscribes the press from reporting events that transpire in the courtroom.... But we must remember that reversals [of unfair convictions] are but palliatives; the cure lies in those remedial measures that will prevent the prejudice at its inception. The courts must take such steps by rule and regulation that will protect their processes from

---

3. We note that attorneys are also under the ethical obligation to ensure that nonlawyers who assist them in the rendition of professional services conform their conduct to the professional obligations of the lawyer. Pa. Rule of Professional Conduct 5.3.

4. The Intervenors make no claims under the Pennsylvania Constitution.

prejudicial outside interferences. Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function. Collaboration between counsel and the press as to information affecting the fairness of a criminal trial is not only subject to regulation, but is highly censurable and worthy of disciplinary measures.

*Sheppard v. Maxwell,* 384 U.S. 333, 362–63, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).[5] With these competing interests in mind, the American Bar Association (ABA) promulgated both a Model Code of Professional Responsibility and Standards relating to Fair Trial and Free Press. The Pennsylvania Supreme Court has adopted the current Rules of Professional Conduct based in part upon these ABA standards. *See* Comment, Rule 3.6, Rules of Professional Conduct, adopted October 16, 1987.

When reviewing cases which implicate the First Amendment, the United States Supreme Court has held that appellate courts must make an independent examination of the entire record in order to ensure that the order in question does not constitute a forbidden intrusion into the field of free expression. *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1038, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991) (Kennedy, J.) (citing *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984), and *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)); *Sheppard v. Maxwell, supra.* As this Court has stated:

> Striking the balance between the right to a fair trial and freedom of the press has long been a complex and troublesome problem. Freedom of thought and discussion and the public's right to know are very important rights in a democratic soci-

ety. Therefore the news media must be given wide latitude in reporting material about criminal proceedings.... On the other hand[,] the judicial system cannot allow news accounts to interfere with the administration of justice. Each and every defendant in a criminal prosecution is entitled to a fair trial which is conducted solely in the courtroom and is free of any outside influence.

*Commonwealth v. Casper,* 249 Pa.Super. 21, 375 A.2d 737, 739 (Pa.Super.1977) (citations omitted), *rev'd on other grounds,* 481 Pa. 143, 392 A.2d 287 (1978).

The Intervenors concede that, given the state of the case law on this issue, the standard of review appropriate to this case is not readily ascertainable. The two leading cases are *Gentile, supra,* and *Nebraska Press Ass'n. v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). We will discuss both cases in an effort to construct the proper standard of review.

In *Gentile,* an attorney representing a criminal defendant in a highly-publicized case conducted a press conference in an attempt to countermand negative publicity. Trial commenced six months after this press conference, and the defendant was acquitted of all charges. Thereafter, the State Bar of Nevada alleged that the attorney, by holding the news conference, had violated Nevada's Rule 177 (based upon Model Rule of Professional Conduct 3.6 and similar to Pennsylvania Rule 3.6). The Nevada Disciplinary Board found that Gentile had violated the rule and recommended a private reprimand. The Nevada Supreme Court affirmed this decision.

The United States Supreme Court reversed. The Court held that Nevada's Rule 177, although restricting the free speech rights of attorneys in a criminal case, did not violate the First Amendment. However, the Court concluded that the rule as interpreted

---

**5.** We note that Lambert's own counsel has indicated her eagerness to discuss issues relating to this case with the media. By implication, therefore, Lambert is not asserting that her Sixth Amendment rights to an untainted criminal trial are being thwarted by the order limiting publicity. A court, however, has an affirmative duty to protect its proceedings from improper outside influences, regardless of the willingness of each party to defend these fundamental rights. *See Sheppard v. Maxwell, supra. See also Gannett Co. v. DePasquale,* 443 U.S. 368, 378, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) (noting that "a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial publicity.").

by the Nevada Supreme Court was void for vagueness. The Court issued a 5–4 decision, each part of the holding joined by a different majority of Justices. The majority decision relevant to our discussion regarding the appropriate standard of review was penned by Chief Justice Rehnquist. The Chief Justice noted that a basic foundation of our criminal decision-making process is that "[t]he outcome of a criminal trial is to be decided by impartial jurors, who know as little as possible of the case, based on material admitted into evidence before them in a court proceeding." 501 U.S. at 1070, 111 S.Ct. 2720. Chief Justice Rehnquist also recognized, however, that the "First Amendment protections of speech and press have been held . . . to require a showing of 'clear and present danger' that a malfunction in the criminal justice system will be caused before a State may prohibit media speech or publication about a particular pending trial." *Id.* at 1070–71, 111 S.Ct. 2720.

Importantly, in the context of the First Amendment rights of attorneys, the Court observed that "lawyers in pending cases were subject to ethical restrictions on speech to which an ordinary citizen would not be." *Id.* at 1071, 111 S.Ct. 2720 (citing *In re Sawyer*, 360 U.S. 622, 79 S.Ct. 1376, 3 L.Ed.2d 1473 (1959)). Because an attorney is an officer of the court, he or she is subject to ethical responsibilities in order to ensure that the attorney's exercise of his First Amendment rights does not result in a public debate that will redound to the detriment of the criminal defendant or obstruct the fair administration of justice. *Id.* at 1074, 111 S.Ct. 2720. Accordingly, the Court held that "[w]hen a state regulation implicates First Amendment rights, the Court must balance those interests against the State's legitimate interest in regulating the activity in question." *Id.* at 1075, 111 S.Ct. 2720. Because Nevada's Rule 177 imposed only narrow and necessary limitations on the speech of lawyers, the Rule, which only prohibited speech that had a substantial likelihood of material prejudice to an adjudicatory proceeding, did not, on its face, violate the First Amendment. *Id.*

In contrast, *Nebraska Press* involved a county court order that prohibited everyone attending certain court proceedings from releasing for public dissemination any testimony given at a pretrial hearing. 427 U.S. at 539, 96 S.Ct. 2791. The *Nebraska Press* order also required the members of the press to observe the Nebraska Bar–Press guidelines. *Id.* The order in question only applied until the jury was impaneled. *Id.*

When reviewing this order, the Supreme Court noted that "when [a] case is a 'sensational' one tensions develop between the right of the accused to trial by an impartial jury and the rights guaranteed others by the First Amendment." *Id.* at 551, 96 S.Ct. 2791. However, the Court concluded that "pre-trial publicity – even pervasive, adverse publicity – does not inevitably lead to an unfair trial." *Id.* at 554, 96 S.Ct. 2791. The Court explained:

> The First Amendment provides that "Congress shall make no law . . . abridging the freedom . . . of the press," and it is "no longer open to doubt that the liberty of the press, and of speech, is within the liberty safeguarded by the due process clause of the Fourteenth Amendment from invasion by state action." The Court has interpreted these guarantees to afford special protection against orders that prohibit the publication or broadcast of particular information or commentary – orders that impose a "previous" or "prior" restraint on speech.

*Id.* at 556, 96 S.Ct. 2791 (citations omitted). As a prior restraint on expression, the order under review had a heavy presumption against its validity. *Id.* at 558, 96 S.Ct. 2791. "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights. . . . [Therefore,] the protection against prior restraint should have particular force as applied to reporting of criminal proceedings. . . ." *Id.* at 559, 96 S.Ct. 2791. Finally, however, the Court opined that:

> The extraordinary protections afforded by the First Amendment carry with them something in the nature of a fiduciary duty to exercise the protected rights responsibly – a duty widely acknowledged but not

always observed by editors and publishers. It is not asking too much to suggest that those who exercise First Amendment rights in newspapers or broadcasting enterprises direct some effort to protect the rights of an accused to a fair trial by unbiased jurors.

*Id.* at 560, 96 S.Ct. 2791.

In analyzing the restraining order in *Nebraska Press,* the Court concluded that, although there was a risk that the pretrial publicity would adversely impact the jury venire in the underlying case, the trial court had not adequately considered less restrictive alternatives before completely banning all news reporting of the case. *Id.* at 568–69, 96 S.Ct. 2791. In addition, the Supreme Court found that it was not clearly established that the prior restraint would serve its intended purpose—to protect the defendant's right to a fair trial. *Id.* Thus, the Court concluded that the order was an improper prior restraint on the First Amendment rights of the parties involved.

In determining the standard to be used in reviewing the present case, we note that the PCRA court did not issue an all-encompassing restriction on all news coverage regarding Lambert's PCRA petition. Unlike the situation involved in *Nebraska Press,* the PCRA court noted that "[t]he press has every right to report developments, testimony and decisions in pending cases." Trial Court Opinion, 4/14/98, at 12. The court explained that its "courtroom is open for all proceedings where testimony will be taken or evidence presented." *Id.* at 17. In fact, in the trial court's view,

> The order limiting publicity has nothing to do with public scrutiny of this case. This court intends to hold a full, fair and open hearing on all issues raised in Ms. Lambert's petition. We will provide each side with the opportunity to present its witnesses and we will afford each side an opportunity to present as much evidence as it requires. We will also afford both sides the opportunity for full and complete cross examination of each witness called. The media will be present and developments reported as soon as they occur. No

portion of these proceedings will be in secret.

*Id.* at 18. The present situation is thus inapposite to that reviewed by the Supreme Court in *Nebraska Press.* Accordingly, the heavy presumption against the validity of the prior restriction as set forth in *Nebraska Press* is inappropriate.

We recognize that this situation is also factually distinct from that of *Gentile.* In the present case, we are not concerned with a punishment that has been imposed after an attorney has exercised his free speech rights as guaranteed by the First Amendment. However, the *Gentile* rationale permitting certain limitations on the free speech rights of attorneys involved in pending litigation is germane. An attorney is an officer of the court, who agrees to abide by certain ethical rules before being permitted to practice law. As the Preamble to the Pennsylvania Rules of Professional Conduct provides, "A lawyer is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice." As a part of this "special responsibility," an attorney must comport himself in a manner that ensures fairness and justice to all parties to litigation. Part of this responsibility may include, especially in highly publicized situations, some degree of restraint in revealing the details of a criminal trial to the general public. This will ensure that a criminal defendant, regardless of the infamous nature of the underlying crime, will have her day in court unsullied by a jury predisposed by media coverage before trial has begun.

■ We therefore adopt the reasoning of the *Gentile* Court. Thus, limitations on the speech of attorneys involved in pending litigation, even when such limitations are prior restraints on the attorney's First Amendment rights, will be constitutional if the prohibited speech is limited to that which contains a substantial likelihood of material prejudice to an adjudicatory proceeding.

The Intervenors argue that there can be no substantial likelihood of material prejudice to the instant adjudicatory proceeding because all matters relating to PCRA petitions are conducted without a jury. The trial court responded to this argument by stating

that, under the circumstances of this case, it is at least reasonably likely that Lambert will be awarded a new trial. Lambert requested a new trial in her PCRA petition. Further, the District Court determined that a new trial was necessary. Thus, even before ruling on the merits of Lambert's PCRA petition, the court found that the potential for tainting the prospective jury pool in this new trial was significant and that this possibility compelled the order limiting publicity.

■ We cannot agree that the possibility of a new trial, to be conducted at some time in the future, necessarily compels a trial court to limit publicity in any given case. It is well settled that the mere existence of pretrial publicity does not compel the conclusion that an impartial jury could not be empaneled in a particular case. *See, e.g., Commonwealth v. Counterman*, 553 Pa. 370, 388–89, 719 A.2d 284, 293 (1998). Although "jurors are not required to be totally ignorant of the facts of a case," the existence of sustained, pervasive, inflammatory publicity may cause prejudice to a criminal defendant. *Id.* Importantly, however, such prejudice is diminished when the community has an opportunity to "cool down" from the effects of the publicity. *Id.*

Here, even given the unique time constraints imposed by this particular case, any hypothetical new trial would not be conducted until several months after the decision rendered on Lambert's PCRA petition. Given the history of this case, it is reasonable to conclude that the PCRA court's decision will be appealed regardless of the result. This passage of time would provide a sufficient cooling off period to ameliorate any prejudice suffered due to publicity surrounding the adjudication of the PCRA petition. *Id.* (holding that a period of one year between pretrial publicity and actual trial was a sufficient cooling off period); *see also Commonwealth v. McCullum*, 529 Pa. 117, 127, 602 A.2d 313, 317–18 (1992) (finding that a nine-month period of time between publicity and trial was sufficient). Moreover, if such a cooling off period did not occur, or if Lambert for some other reason believed that an impartial jury could not be empaneled at this hypothetical new trial, the appropriate remedy would be for her to request a change of venue or venire.

■ However, this determination does not end our inquiry regarding the applicability of Rule 3.6 to the instant case. Rule 3.6 of the Pennsylvania Rules of Professional Conduct states that a lawyer shall not make an extrajudicial statement that the lawyer knows or reasonably should know will have a substantial likelihood of materially prejudicing an adjudicative proceeding. Rule 3.6(a). Further, a statement is likely to have the effect of prejudicing an adjudicative proceeding when the statement refers to "a civil matter triable to a jury, *a criminal matter,* or any other proceeding that could result in incarceration[.]" Rule 3.6(b) (emphasis added). Although conducted without a jury, a PCRA hearing is, by definition, a criminal matter. The Intervenors' assertions that a PCRA petition is anything to the contrary strains the credulity of this Court. The fact that no published decisions interpreting this rule implicate PCRA adjudications is not dispositive. We conclude that, according to the plain language of the rule, statements relating to proceedings arising under the PCRA are included under this rule.

■ Rule 3.6 prohibits attorneys from making statements to the press which the lawyer knows or reasonably should know will have a substantial likelihood of materially prejudicing the adjudicative proceeding. After review, we hold that this is a narrow and necessary limitation on the free speech rights of attorneys. This language mirrors that of Nevada's Supreme Court Rule 177, which was found to be constitutional in *Gentile*. Accordingly, we conclude that Pennsylvania Rule 3.6 of the Rules of Professional Conduct does not violate the First Amendment.

The Intervenors maintain, however, that, because *Gentile* held that Nevada's Rule 177 was void for vagueness, Pennsylvania Rule 3.6 is likewise defective. On this point, Justice Kennedy noted in *Gentile* that the Supreme Court was "not called upon to determine the constitutionality of the ABA Model Rule of Professional Conduct 3.6 (1981), but only Rule 177 *as it has been interpreted and applied by the State of Nevada.*" *Gentile,*

501 U.S. at 1036, 111 S.Ct. 2720 (emphasis added). Further, Justice Kennedy posited:

Model Rule 3.6's requirement of substantial likelihood of material prejudice is not necessarily flawed. Interpreted in a proper and narrow manner, for instance, to prevent an attorney of record from releasing information of grave prejudice on the eve of jury selection, the phrase substantial likelihood of material prejudice might punish only speech that creates a danger of imminent and substantial harm. A rule governing speech, even speech entitled to full constitutional protection, need not use the words "clear and present danger" in order to pass constitutional muster.

*Id.* Because *Gentile* only found that Nevada's rule was unconstitutional *as applied,* this decision does not mandate a similar finding when evaluating the Pennsylvania rule. However, the *Gentile* decision provides some guidance to our resolution of the issue.

In writing the Opinion of the Court on the vagueness issue, Justice Kennedy found that the Nevada rule was unconstitutionally void because of its "safe harbor" provision. *Id.* at 1048, 111 S.Ct. 2720. This provision, section 177(3)(a), provided that a lawyer may state "without elaboration" the "general nature of the claim or defense." *Id.* Such language is similarly included in Pennsylvania Rule 3.6.

The Supreme Court found that this section of the Nevada rule failed to provide fair notice of what speech was permissible. *Id.* The Court noted that Gentile believed that his statements at the press conference were protected under this safe harbor provision. In fact, several times during the press conference Gentile refused to answer certain questions which sought more details. Gentile testified that he had studied the Rule extensively before the press conference and made a conscious effort to comply with its provisions. However, the Nevada Supreme Court, when ruling on the disciplinary action imposed against Gentile, merely stated that he had gone beyond the scope of the statements permitted by Rule 177(3). *Id.* at 1049, 111 S.Ct. 2720. The Nevada Court did not elaborate on how Gentile had violated the rule. Thus, the Court concluded that "the Rule is so imprecise that discriminatory enforcement is a real possibility." *Id.* at 1051, 111 S.Ct. 2720. Because of this imprecision, the Rule was declared to be void for vagueness. *Id.*; *see also id.* at 1081, 111 S.Ct. 2720 (O'Connor, J., concurring) ("[A] vague law offends the Constitution because it fails to give fair notice to those it is intended to deter and creates the possibility of discriminatory enforcement.").

Our research has failed to disclose a case where appellate courts of this Commonwealth have interpreted or applied this section of the Rules of Professional Conduct. The Intervenors argue that Rule 3.6 is void for vagueness based in large part upon the trial court's interpretation of the Rule as contained in the initial order dated March 6, 1998. However, that order was amended following a hearing at which the Intervenors were permitted to explain their First Amendment concerns. The trial court's opinion issued in conjunction with the Amended Order of April 14, 1998, provides the reasoning behind the court's conclusion that the order limiting publicity was required in this case:

The order limiting publicity and its preamble were meant, in practical terms, to invite the parties and their counsel to cooperate in limiting the extracurricular activity in this case. The order was, in effect, a request to conduct these proceedings on a high level, to take the "high ground," as it were. The dignity of judicial proceedings and the credibility of those proceedings in the eyes of the public are seriously compromised by statements to the effect that certain participants in the case are "evil" or by comments which continue to vilify participants on both sides of the case. This court may demand adherence to the precepts of our criminal justice system and to our Pennsylvania Supreme Court Rules of Professional Conduct. The order limiting publicity does exactly that.

Trial Court Opinion, 4/14/98, at 12. The Intervenors argue that "[t]he trial court's interpretation of the Rule appears to impose more restrictions on speech than the Rule itself, and this leaves persons subject to the Order entirely uncertain as to what may be said." The Intervenors' Brief at 32. Further, the Intervenors maintain that any rea-

sonable person "would conclude that almost anything stated publicly might risk sanction or contempt, and consequently refuse to say virtually anything at all to [the Intervenors]." *Id.* In support of this conclusion, the Intervenors have included an affidavit from Lambert's own attorney, which states, in part, that she has

> been unwilling to speak to the press except in an extremely limited way. Although it is possible that the Order and Rule 3.6 allow more elaborate speech, it is impossible to tell from the Order what is and is not allowed, and counsel do[es] not want to risk contempt, disqualification or other sanctions. I find the Order vague and confusing.

Affidavit of Christina Rainville, dated 3/30/98, at ¶ 17; R.R. at 99a.

As further evidence that the trial court applied the restrictions of Rule 3.6 too broadly, the Intervenors point to the trial court's preamble to its original order of March 6, 1998, where the trial court expressed dismay that counsel had informed the media of a pending hearing on a pre-trial motion. The Intervenors point out that Rule 3.6 permits an attorney to inform the media of the "scheduling ... of any step in the litigation." Thus, the Intervenors argue that the trial court's interpretation of the rule as evinced in this order was impermissibly broad. We note, however, that none of the language relating to informing the media about the scheduling of court hearings remains in the Amended Order or the Opinion attached thereto. Order, 4/14/98; Trial Court Opinion, *supra*. We therefore will not consider the trial court's statements regarding the permissibility of any scheduling discussions between the media and counsel. Moreover, even if we were to consider these statements, we do not read the above-referenced statement in the March 6 order as an admonition against counsel's informing the media of the scheduling of hearings. Rather, the court was relating its surprise at how swiftly such information passed into the hands of the media.

In addition, the trial court's opinion issued prior to a specific instance of any alleged contravention of its order cannot implicate the application of Rule 3.6. The trial court's interpretation of the scope of Rule 3.6 would be relevant if we were considering a contempt petition for an alleged violation of the April 14, 1998, Order. However, we are not inclined to give the trial court's interpretation preclusive effect when the Order has yet to be applied to a particular circumstance in this case. Instead, we have independently evaluated the Rule and the order imposed in this case.

Following this review, we find that the restrictions of Rule 3.6 provide clear guidance to attorneys in this Commonwealth regarding what may permissibly be said when discussing a pending case with the media, despite the apparent confusion of Lambert's attorney. For instance, although an attorney may not provide the media with his or her opinion regarding the ultimate guilt of a particular defendant, the attorney may discuss the identity of the defendant, where he or she was arrested, and any information contained in the public record. An attorney may likewise not discuss a defendant's prior criminal record or specifics regarding the expected testimony of a witness, but he or she could indicate that an investigation was in progress and disclose who was conducting the investigation. In sum, an attorney may without hesitation comment generally regarding the allegations against his client or provide a general outline of the defense. The attorney may also discuss matters of public record, such as the time and place set for court hearings, without violating Rule 3.6. However, as the attorney becomes increasingly specific regarding the details of the impending action, he or she is in danger of violating Rule 3.6. The Code Comparison following Rule 3.6 states that the rule is intended to be "an illustrative compilation that gives fair notice of conduct ordinarily posing unacceptable dangers to the fair administration of justice." We find that the rule succeeds in this intent.

■ Because of the threat, especially in a criminal case, that media coverage of a trial will result in prejudice to a party thereto, Rule 3.6 must remain somewhat general in order to encompass a multitude of potential applications. After review, however, we con-

clude that the general nature of Pennsylvania Rule 3.6 does not mandate a finding that it is so inherently imprecise that discriminatory enforcement is a real possibility. Accordingly, we hold that Rule 3.6 is not unconstitutionally vague.

In conclusion, we find that the Order of April 14, 1998, is a proper balance between the First Amendment rights of attorneys in a pending criminal action and the Sixth Amendment rights of the criminal defendants in such actions. Therefore, the order, and Rule 3.6 of the Pennsylvania Rules of Professional Conduct, which it incorporates, is not unconstitutional. Moreover, Rule 3.6 is not void for vagueness, either on its face or as applied in this situation. Thus, we will affirm the trial court's imposition of the order that limited publicity in this case.

Order affirmed.

