J-S24021-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHNATHAN JERMIA MORRIS | : | |
| | : | |
| Appellant | : | No. 1261 WDA 2024 |

Appeal from the Order Entered September 17, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001424-2023

BEFORE: NICHOLS, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.:               **FILED: NOVEMBER 5, 2025**

Johnathan Jermia Morris appeals from the entry of an order restricting parties and witnesses from making extrajudicial statements about this case and vacating a previous gag order. We affirm.

The Commonwealth charged Morris with numerous offenses, including criminal homicide and murder of a law enforcement officer in the first degree.[1] Counsel requested a gag order, which the court granted on February 21, 2023 ("February Gag Order"). N.T., Gag Order Hearing, 4/17/24, at 6, 8; *see* Praecipe for Entry of Adverse Order Under R.A.P. 301(e), dated 2/21/23 at 6 (unpaginated) ("Order Restricting Extrajudicial Statement of Parties, Attorney and Witnesses"). However, the order was never docketed.

---

[1] 18 Pa.C.S.A. §§ 2501 and 2507(a), respectively.

A year later, in March 2024, Morris, who was now represented by new counsel, filed a motion and an amended motion to vacate the February Gag Order. *See* Order of Court, filed 3/8/24 (order indicating that court received "Defendant's Motion to Lift Gag Order" and requesting Commonwealth file a response); Amended Motion to Vacate the Gag Order As Unconstitutional, filed 3/24/24. At a hearing, the Commonwealth presented testimony from Morris's first counsel, who had sought the February Gag Order. Counsel then representing Morris argued that he should be able to respond publicly to previous public comments by the district attorney. The court stated that the comments were "remote" in time and that addressing them could "potentially affect or create problems with the anticipated jury pool." N.T. at 57. The court said that it would not allow responses to the comments "without a court order that restricts reasonably the parties, including the attorneys," who it noted are subject to the trial publicity rule of the Rules of Professional Conduct. *Id.* at 58; *see* Pa.R.P.C. 3.6. The court ultimately denied both the motion to vacate the gag order and the amended motion to vacate, but neither order was entered on the docket.

The day after the hearing on the motions to vacate the gag order, April 18, 2024, the Commonwealth moved to hold Morris's mother, Candace Tyler, in contempt of the February Gag Order. It alleged that she had violated the order by creating a webpage on a fundraising website called Fundly that included prejudicial and inflammatory content. The court appointed counsel for Tyler and, following a hearing, it found her in violation of the February Gag

Order. It therefore ordered her to remove the contested content. **See** Order of Court ("April Order"), filed 4/22/24.

Two days later, on April 24, 2024, Morris appealed from the February Gag Order. We quashed the appeal "as having been taken from a purported order which is not entered upon the appropriate docket of the lower court." Order, No. 521 WDA 2024, filed 8/7/24 (per curiam).

Approximately five months later, in September 2024, the court issued two more orders. Both are dated September 16 but bear time stamps indicating they were filed on September 15. However, neither were entered on the docket until September 17, 2024.

The first order again denied the motions to vacate the February Gag Order. **See** Order of Court, filed 9/15/24. The second order vacated the February Gag Order and replaced it with a new gag order. **See** Order of Court, filed 9/15/24 ("September Gag Order"), at ¶ 12. The September Gag Order stated:

> [T]he Commonwealth, the Defendant, and counsel for the Defendant, are PROHIBITED from making extrajudicial statements, or directing others to make any statements, that such person knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in this ma[tt]er.

**Id.** at ¶ 2.

The order additionally directed "[c]ounsel and any person employed in the law firm or public office that employs the attorney(s)" to comply with Rule of Professional Conduct 3.6. **See id.** at ¶ 3. It provided that even "if counsel

- 3 -

believes he or she is entitled to make a statement in accordance with Rule 3.6(c), counsel must seek leave of Court" before making the statement. ***Id.*** at ¶ 4; ***see*** Pa.R.P.C. 3.6(c) (stating "notwithstanding paragraph (a), a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client").[2] Morris appealed on October 5, 2024.

Before we turn to the substance of the appeal, we must clear up two procedural questions. The first relates to whether Morris has appealed from an order that was entered on the docket and whether the appeal is timely.

Morris's notice of appeal states that he is appealing from "a '*Gag Order*' that was based on a signed order in this matter on the 21st [d]ay of February 2023[.]" Notice of Appeal, filed 10/5/24, at 1 (emphasis in original). He states that he "made three attempts to enter the order[,] which was never entered. An amended Order was finally entered on the docket (9/15/24)." ***Id.*** He then

---

[2] Rule 3.6(a) provides:

> (a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

Pa.R.P.C. 3.6(a).

offers a page-and-a-half of explanation of this case's procedural history and his attempts at obtaining appellate review.

This Court issued a rule to show cause why the appeal should not be quashed as having been taken from an order that was not entered on the docket, was untimely filed, and was taken from an unappealable, interlocutory order. **See** Rule to Show Cause, filed 1/8/25. Morris responded that "[t]his is an appeal of a Gag Order and an Injunction removing material on a FUNDLY web site." Response to Rule to Show Cause, filed 1/11/25, at 1 (unpaginated). He alleged that the February Gag Order "was sanctioned in motions court but not filed until September 16, 2024." **Id.** at 2 (unpaginated). He also claimed that the court "filed an edited version" of the February Gag Order on September 16, 2024, and his appeal is a collateral appeal. **Id.** This Court discharged the show cause order and referred the issue to this panel.

Morris's notice of appeal is not well drafted, but it nevertheless shows with sufficient clarity that he has appealed from the September Gag Order. The notice of appeal states in substance that Morris is appealing from "a '*Gag Order*' that was based on a signed order" that "was never entered" on the docket, and "[a]n amended Order was finally entered on the docket (9/15/24)."

Confusion ensues because no order was "entered on the docket" on September 15, 2024. Rather, both the order denying the motions to vacate and the order entering the September Gag Order are stamped as **filed** on September 15, 2024, but they were not entered on the docket until September

- 5 -

17, 2025. Adding to the muddle is the fact that neither of the September 2024 orders by its terms "amended" the February Gag Order. One of the orders denied the motions to vacate the February Gag Order and the other – the September Gag Order – vacated the February Gag Order and entered a new gag order.

These inaccuracies, though not desirable, are not so confusing as to require us to reject the appeal. Although "entry on the docket" is a term of art signifying the noting of an event on the docket, experience teaches that the phrase is sometimes used inaccurately in legal filings to mean the mere issuance of an order. Although neither order was "entered" on September 15, 2024, both were stamped as filed on that date. It bears emphasizing that no other orders were technically "entered" on that date. The reference to an "amended order" clarifies that as between the two orders marked as filed on September 15, Morris is appealing from the September Gag Order. Because it vacated the February Gag Order and entered a new gag order, the September Gag Order had the practical effect of amending the February Gag Order.

In the instant circumstances, the notice of appeal adequately identified the appeal as being from the September Gag Order. Because Morris undisputedly filed the notice of appeal less than 30 days after the entry of the September Gag Order, we will not quash the appeal as being from an order never entered on the lower court docket or as untimely.

We now must address whether there is another jurisdictional impediment to this appeal – lack of finality. The September Gag Order is not

a final order because it does not dispose of all claims and of all parties. Nonetheless, our jurisdiction is proper because the September Gag Order was immediately appealable as a collateral order.

When a nonfinal order (1) "is separable from, and collateral to, the main cause of action"; (2) involves a right "too important to be denied review"; and (3) "the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost," we have appellate jurisdiction under the collateral order doctrine. Pa.R.A.P. 313(b).

The September Gag Order meets all three requirements. Its limitations on extrajudicial statements is separable from, and collateral to, the question of Morris's guilt. Furthermore, it implicates First Amendment concerns, which are too important to be denied immediate review. Finally, postponing review until after final judgment may as a practical matter result in the irreparable loss of Morris's claims. As such, we will address the merits of Morris's claims related to the September Gag Order. *See Commonwealth v. Lambert*, 723 A.2d 684, 688 (Pa.Super. 1998) (concluding a gag order met the collateral order doctrine).

Morris raises the following questions:

> I. Did the Court violate the First Amendment, Article I, Section 7 of the Pennsylvania Constitution, as well as Equal Protection by ordering the removal of a Fundly fundraiser webpage based on a Gag Order citing Pennsylvania Rule of Professional Conduct 3.6, thereby chilling speech?
>
> II. Did the trial court properly uphold the Gag order and order the removal of materials from [Morris's] website

without meeting the substantial likelihood standard of prejudicing a trial? The court did not give proper weight to all the existing public statements in the public arena, nor did it balance its decision with [Morris's] need to raise funds for experts, and didn't consider the impact of freedom of speech on a significant public issue.

III. Did the court violate procedural and substantive due process by upholding the 2/21/23 gag order, failing to file or edit it immediately, ordering the removal of information from a fundraising website, and seeking to hold [Morris's] mother in contempt?

IV. Did the trial court abuse its discretion by preventing anyone from the Defense team from correcting misleading statements made by the District Attorney and the Allegheny County Police Department Superintendent, because the Court deemed the statements harmless because [sic] stating they were stale?

V. Did the Court abuse its discretion when initially, it did not provide a process to address prejudicial extrajudicial statements, but 5 months later eventually implemented a new Gag Order. However, the amended Order requires Counsel to file for leave of court, adding an additional burdensome requirement to Rule 3.6(b) and (c).

VI. Did the Court commit errors of law when upholding a gag order on potential lay witnesses, with language from Rule of Professional Conduct 3.6, which is intended for lawyers?

Morris's Br. at 2-4 (answers of trial court and footnote omitted).[3]

_____

[3] The issues in Morris's Statement of Questions Involved do not match the sections of his Argument, in violation of Pa.R.A.P. 2119(a). He presents six issues in his Statement of Questions Involved but his argument is divided into seven sections. Those sections bear titles such as "Jurisdiction," "Standing," and "Equal Protection," that do not pair in an obvious way with the issues in the Statement of Questions Involved. **See** Morris's Br. at 2-4, 12-37. We
*(Footnote Continued Next Page)*

In his first issue, Morris claims that the court violated his constitutional rights "by ordering the removal of a Fundly fundraiser webpage based on a Gag Order," referencing the February Gag Order. Morris's Br. at 13.[4] We do not address the merits of this claim. Morris filed his appeal more than 30 days after the February Gag Order, rendering any challenge to it untimely. **See** Pa.R.A.P. 903(a).

In his second, third, and sixth issues, Morris appears to claim that the court erred in "upholding" the February Gag Order by enforcing it against his mother. He argues that both gag orders "violate substantive due process by preventing [Morris's mother], from raising funds for experts" for Morris's defense and "don't provide sufficient explanation of what is proscribed." Morris's Br. at 19, 20.

The challenge to the February Gag Order is moot because the trial court vacated that order. **See Commonwealth v. Nava**, 966 A.2d 630, 632-33 (Pa.Super. 2009) (stating that an issue is moot if any ruling can have no practical effect). As to the September Gag Order, Morris offers no developed argument about the way in which he believes it violates due process or fails to give a sufficient explanation of proscribed conduct. Instead, Morris provides

_____

nonetheless believe we understand the arguments Morris makes for each of his questions presented. To the extent Morris may claim that we did not understand or missed an argument, the argument is waived.

[4] "Although [Morris's] mother was found in violation of the[] 2/21/23[] Order and subject to contempt sanctions, [Morris's] speech has been chilled[.]" Morris's Br. at 13.

- 9 -

citations only to authorities for boilerplate due process principles.[5] He argues from those basic principles that the order prevents his mother "from raising funds for experts to help [Morris] defend against the death penalty" and from "discussing police tactics used on individuals in mental health crises," and is an improper "blanket" gag order. Morris's Br. at 19-20. He has not cited any authority specifically on point for any of these propositions and has not claimed that there are no other authorities that support his arguments. Therefore, to the extent that Morris sought to challenge the constitutional validity of the September Gag Order, we find the argument waived for lack of development. *See Commonwealth v. Charleston*, 94 A.3d 1012, 1022-23 (Pa.Super. 2014) (finding waiver where appellant failed to develop argument).[6]

---

[5] *See* Morris's Br. at 19 ("The Supreme Court has interpreted the Fifth and Fourteenth Amendments' Due Process Clause [sic], which prevents the government from depriving any individual of life, liberty, or property without due process of law, to safeguard certain fundamental constitutional rights from federal government interference, irrespective of the procedures followed by the government when enforcing the law. *Zablocki v. Redhail*, 434 U.S. 374, 386-87 (1978) (citing *Loving v. Virginia*, 388 U.S. 1 (1967)).").

[6] Moreover, Morris's arguments are not well founded. Putting aside concerns about issue preservation and standing, the September Gag Order cannot be fairly characterized as a "blanket" order. It did not bar all communications about Morris's case or even all public communications about the case. It only barred a specific category of communications: "extrajudicial statements" that the speaker knows or reasonably should know "will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in this matter." It likewise does not preclude all efforts at raising funds for mental health experts or all public commentary on "police tactics used on individuals in mental health crises." It
*(Footnote Continued Next Page)*

Morris's remaining claims, issues four and five, appear to challenge the September Gag Order. He argues that the court abused its discretion by "preventing anyone from the [d]efense team from correcting misleading statements made by the District Attorney and the Allegheny County Police Department Superintendent[.]" Morris's Br. at 3. He asserts that these statements included "accusations . . . regarding [Morris's] involvement in uncharged crimes, such as shooting into an open convenience store the night before this case and threatening to blow up the Navy Credit Union in Florida." *Id.* at 8. Morris argues that although the court deemed the statements "harmless due to their age" and asserted the statements "have not been repeated **live** since the issuance of" the February Gag Order, "the District Attorney is subject to Rule 3.6 as well as special rule for prosecutors." *Id.* at 39 (emphasis in original).

Morris also claims that the September Gag Order adds "an additional burdensome" requirement to Rule 3.6(b) and (c) of the Pennsylvania Rules of Professional Conduct by requiring counsel to seek leave of court before responding to others' extrajudicial statements. *Id.* at 3-4. He maintains that because "Rule 3.6's general language is vulnerable to various interpretations," an order based on the rule creates the potential for chilled speech that would otherwise be protected within the rule. *Id.* at 22. He cites ***Gentile v. State***

---

only applies to such commentary as "will have a substantial likelihood of materially prejudicing an adjudicative proceeding in this matter."

***Bar of Nevada***, 501 U.S. 1030, 1049 (1991), and claims that the issue raised in ***Gentile*** is "on point here." ***Id.*** at 23. These claims lack merit.

First, the court did not bar counsel from responding to the statements of the District Attorney. Rather, it stated that it would enter an order that would reasonably restrict the parties' statements to the confines of Rule 3.6. ***See*** N.T. at 58.[7] The September Gag Order provided that the parties were subject to Rule 3.6, and if counsel believed they were entitled to make a statement pursuant to Rule 3.6(c), they should first seek leave of the court.

What is more, Morris's reliance on ***Gentile*** is misplaced. There, the Supreme Court addressed a challenge to Nevada's version of Rule 3.6. The rule there "prohibited a lawyer from making extrajudicial statements to the press that he knows or reasonably should know will have a 'substantial likelihood of materially prejudicing' an adjudicative proceeding[.]" ***Gentile***, 501 U.S. at 1030. A five-justice majority of the Court found that aspect of the rule was constitutional. ***Id.*** at 1075.[8] However, a different five-justice majority

---

[7] If the court's statement constitutes an order barring such responses, then we lack jurisdiction to entertain Morris's claim. He waited more than 30 days to appeal and he has not established that the court's statement constitutes a collateral order.

[8] ***See Gentile***, 501 U.S. at 1075 (Opinion of Rehnquist, C.J.) ("We agree with the majority of the States that the 'substantial likelihood of material prejudice' standard constitutes a constitutionally permissible balance between the First Amendment rights of attorneys in pending cases and the State's interest in fair trials"); ***see also id.*** at 1082 (O'Connor, J., concurring) ("I agree with THE CHIEF JUSTICE that the 'substantial likelihood of material prejudice' standard articulated in [Nevada's rule] passes constitutional muster").

ultimately found the rule was void because a "safe harbor" provision, intended to identify examples of permissible speech, was unduly vague. ***See id.*** at 1048.[9] ***Gentile*** thus supports the September Gag Order. It used the language that ***Gentile*** approved and did not include any language akin to the "safe harbor" language that ***Gentile*** disapproved. ***See also Lambert***, 723 A.2d at 695 (finding Rule 3.6 not unconstitutionally vague).[10]

Finally, Morris raised his claim that requiring leave of court before making extrajudicial statements was unduly burdensome for the first time in his Rule 1925(b) statement. It is therefore waived. ***See*** Pa.R.A.P. 302(a). Moreover, we do not think the requirement imposed an undue burden. The order states that if counsel seeks such leave, the court "shall act expeditiously regarding a request and shall schedule a hearing if necessary to address the issue." September Gag Order at ¶ 4. Morris's challenges fail, and we therefore affirm.

Order affirmed.

_____

[9] ***See Gentile***, 501 U.S. at 1048 (Opinion of Kennedy, J.) ("As interpreted by the Nevada Supreme Court, the Rule is void for vagueness, in any event, for its safe harbor provision, Rule 177(3), misled petitioner into thinking that he could give his press conference without fear of discipline"); ***see also id.*** at 1082 (O'Connor, J., concurring) ("For the reasons set out in Part III of Justice KENNEDY's opinion, however, I believe that Nevada's Rule is void for vagueness").

[10] To the extent that Morris claims the order and Rule 3.6 are unconstitutionally vague, he did not raise this issue below and therefore waived it. ***See*** Pa.R.A.P. 302(a) (issues not raised before trial court are waived on appeal).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>11/5/2025</u>