## King *v.* Philadelphia Co., Appellant.

[Marked to be reported.]

*Officers—Acts performed under unconstitutional act.*

Acts performed by municipal officers under the authority of an act of the legislature are not rendered invalid, when the act of the legislature is subsequently declared void.

*Opening of streets under void act of June 14, 1887—Equity.*

On a bill in equity to restrain a gas company from maintaining its pipes in a street, it appeared that the street in question had been opened and the damages therefor had been assessed and paid, in strict conformity with the act of June 14, 1887, P. L. 386. The pipes were laid by permission of the city in 1889. In 1891 the act of 1887 was declared unconstitutional. *Held,* that plaintiff could not call in question the validity of the proceedings to open the street, and that defendants had a right to assume that the officials who opened the street and gave them permission to use it were legally constituted officials, with full power to act as they did.

*Estoppel—Acceptance of assessments.*

In such a case, it seems that no question of estoppel arises against plaintiff by reason of payment by him of assessed benefits.

Argued Nov. 10, 1892. Appeal, No. 273, Oct. T., 1892, by defendants, from decree of C. P. No. 1, Allegheny Co., March T., 1891, No. 358, in favor of plaintiffs, Sarah C. King et al., on bill in equity. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Bill in equity to restrain maintenance of gas pipes in street.

The bill averred that plaintiffs were the owners in fee of certain land in the city of Pittsburgh upon which defendant entered and laid a twenty-four inch pipe line for the transportation of

natural gas; that for part of the distance it is laid less than two feet below the surface, and where it crosses a ravine it is above the surface on a trestle. The bill prayed for an injunction (1) against defendants from further keeping and maintaining said pipe line on said land, (2) for an account and payment of damages, and (3) for general relief.

Defendants in their answer averred that the pipe line in question was laid upon Negley avenue in the months of August and September, 1889, and the maintenance and use of the pipe line was a lawful exercise of the rights, powers and privileges of defendants under their charter and the ordinances of the city of Pittsburgh. The answer admitted that the pipe line was above the surface in crossing the ravine and only two feet below the surface for part of the way.

The case was referred to William P. Schell, Jr., Esq., as master, who found the facts as stated in the opinion of the Supreme Court. The master recommended a decree as prayed for in the bill, citing Pa. R. R. Co.'s Ap., 115 Pa. 514; Ferguson's Ap., 117 Pa. 426; Groff's Ap., 128 Pa. 621; Barker v. Hartman, 129 Pa. 551.

The following exceptions, inter alia, were filed to the master's report:

" 1. The master erred in his finding and discussion of facts in giving undue prominence to the matter of notice given by Alexander King to the defendant in regard to defendant's location and construction of its pipe line within the lines of Negley avenue as located and ordered opened by the city of Pittsburgh, especially in view of the fact also admitted and found that Alexander King recognized and acquiesced in the proceedings for the opening of said avenue by paying his assessments therefor, it nowhere appearing in the testimony that Alexander King ever suggested or asserted to the defendant any question as to the legal existence of said avenue as an opened street, or did more than warn the defendant off the property for reasons of his own, just as he might if so inclined have warned them off a street in actual use by the public." [1]

" 3. The master erred in not finding distinctly as a fact that the board of viewers of the city of Pittsburgh, in their report as to the damages and benefits arising from the opening of Negley avenue from Bryant street to Butler street, assessed

benefits against or damages in favor of the several or respective owners of every piece of property abutting on the said avenue, and that without appeal from the report of said viewers, and without otherwise in any manner contesting the validity and binding force of said viewer's report all of said property owners without exception, and including the ancestor of the plaintiffs, paid the damages and accepted the benefits assessed or awarded by the viewers. [2]

" 4. The master erred in not finding as a fact that the defendant company received from the chief of the department of public works of the city of Pittsburgh its first information of the opening of Negley avenue, and the payment of the damages and benefits for such opening, and that it was upon the specific suggestion, recommendation and authorization of that officer of the said city that the defendant company proceeded to locate and construct its pipe line upon Negley avenue as a public highway. [3]

" 5. The master erred in holding as matter of law that under the legislation existing and in force in the year 1888, it was a condition precedent to the exercise by the city of Pittsburgh of the power to open a street, that a majority of the property owners abutting thereon must petition councils for such opening. [4]

" 6. The master erred in not holding as a matter of law, that whatever may have been the power and authority of the city of Pittsburgh or its officers, under the laws of Pennsylvania in 1888, as to the opening of streets, the owners of all the property abutting on Negley avenue between Bryant street and Butler street acquiesced in the opening of said avenue by the city of Pittsburgh, with like effect as if they had voluntarily dedicated the same to public use, or had by agreement among themselves opened the same, and fixed the damages and benefits payable therefor. [5]

" 7. The master erred in holding as matter of law that after the payment of damages, and the receipt of benefits by all the owners of property abutting on Negley avenue, the legal existence of Negley avenue as a public highway can be properly called in question or passed upon in a bill filed by one property owner without making all the other property owners and the city of Pittsburgh parties defendant. [6]

"8. The master erred in not holding as matter of law that all the owners of property abutting on Negley avenue between Bryant street and Butler street, including the plaintiffs, by their concurrent action in ratifying, adopting and acquiescing in the report of the viewers in the assessment of damages and benefits for the opening of said avenue, are estopped from asserting, as against defendant, that said Negley avenue is not a public highway located and opened. [7]

"9. The master erred in not holding as matter of law that Negley avenue from Bryant street to Butler street is, as against the plaintiffs, and all other abutting property owners, a public highway located and opened, and that the defendant, under its charter, the laws of Pennsylvania and the city ordinances, had full power and authority to enter upon said avenue and to locate, construct and maintain its pipe line thereon." [8]

*Errors assigned* were (1–8) in dismissing exceptions, quoting them; (9) in decreeing that defendant be enjoined and restrained from maintaining and using its pipe line; (10) in decreeing that defendant pay the costs of this case; (11) in not dismissing plaintiffs' bill.

*William Scott, John Dalzell* and *Geo. B. Gordon* with him, for appellant.—It was immaterial that Mr. King notified the company not to lay its pipes.

By the payment of all benefits and damages assessed or awarded before the act was declared unconstitutional, the street became and continued to be a lawful highway; all the parties interested having waived their constitutional rights, acquiesced in the proceedings, and paid or received money thereunder, are estopped and concluded as to the lawful opening of this street. The board of viewers appointed and acting under the act of 1887 was charged with judicial duties and was de facto a judicial body. The duty of awarding and ascertaining benefits and damages is essentially a judicial one: Elliott on Roads and Streets, 212.

The acts of an officer appointed by and acting under and pursuant to an unconstitutional law performed before the unconstitutionality of the law has been judicially determined are valid as respects the public and third persons as the acts of an

officer de facto: State v. Carroll, 38 Conn. 449; Masterson v. Matthews, 60 Ala. 260; Black on Judgments, §§ 173, 175; Clark v. Com., 29 Pa. 129; Com. v. McCombs, 56 Pa. 436; Campbell v. Com., 96 Pa. 344; Dunn v. Mellon, 29 W. N. 272.

The whole proceeding, under the act of 1887, was completed, and all rights thereunder fixed and settled. The property owners, who paid money under that proceeding, could not recover it back. The payments were voluntary payments, even if made upon formal demand of the city officers: Peebles v. Pittsburgh, 101 Pa. 304; De La Cuesta v. Ins. Co., 136 Pa. 78.

The property owners, who accepted the damages, cannot question the validity of the proceeding and the existence of the street: Bidwell v. Pittsburgh, 85 Pa. 412; Ferson's Ap., 96 Pa. 140.

If the proceedings for the opening of the street were completed, as they undoubtedly were, it is immaterial whether or not in fact there was any actual travel upon the highway prior to the construction of defendant's pipe line: Com. v. McNaugher, 131 Pa. 55.

*George W. Guthrie,* for appellee.—That the court had jurisdiction in this proceeding is not and cannot be questioned. It is conferred by the act approved June 19, 1871, P. L. 1361, Purd. 357; and is sustained by a long list of cases, of which it is only necessary to refer to Penna. Railroad Co.'s Ap., 115 Pa. 514; Ferguson's Ap., 117 Pa. 426; Barker v. Hartman Steel Co., 129 Pa. 551.

The act of June 14, 1887, under which the ordinance was passed and the proceedings taken, is wholly unconstitutional and void (Pittsburgh's Petition, 138 Pa. 401), and being so, it cannot confer either contract rights or property rights upon any persons, natural or artificial, " and its validity " may be directly questioned by any person adversely interested: Dunn v. Mellon, 147 Pa. 11.

The board of viewers was not a court of any kind, de jure or de facto. If the board of viewers is to be regarded as constituting a court, it was an illegal and unconstitutional body, and its judgments would have no force or effect. A judgment of any court is only conclusive when the parties and the subject-matter are within its jurisdiction. In the present case

it was not shown that Mr. King either had notice of the proceedings, or voluntarily appeared before the board.

The cases of Bidwell v. Pittsburgh, 85 Pa. 412, and Ferson's Ap., 96 Pa. 140, have no application. Mr. King did not in any way promote these proceedings. He never asked the city to open the street—he never acknowledged that it had authority to do so—and by every means in his power gave notice to the world that he denied it.

The payment of the assessment under the circumstances is of no weight. Mr. King was notified by the city attorney that unless the money was paid, a lien would be filed against his property within thirty days, and he knew that if this was done he would be obliged to pay the money, with costs, in order to free his title. Unconstitutional laws cannot confer either contract rights or property rights upon any persons, natural or artificial: Com. v. McNaugher, 131 Pa. 55.

Appellant's right to lay pipe lines in the city of Pittsburgh is regulated by the ordinance of Aug. 10, 1885, which requires them to be buried at least four feet below the surface, and which cannot, by any possible process of reasoning, be construed to authorize it to build them above the actual surface of the ground, simply because its engineers think that at some future day the grade of the street will be so established as to leave them at least four feet below the surface, when no such grade has even been established by ordinance, let alone actually made from the ground. The grade of any highway is the natural surface of the ground until changed by some municipal action. No private party has any right to change this grade for his own interest, nor can the municipality itself, without making compensation in damages: Boro. of New Brighton v. Church, 96 Pa. 331 ; O'Brien v. Phila., 150 Pa. 589. The way the line is constructed constitutes a private nuisance which will be redressed in equity. In addition to the cases cited by the master the attention of the court is called to Unangst's Ap., 55 Pa. 128.

OPINION BY MR. JUSTICE GREEN, April 10, 1893 :

It is not at all questioned that the proceedings for laying out and opening Negley avenue as one of the streets of the city of Pittsburgh, were entirely regular and according to law in all

respects.   An ordinance by the select and common councils of the city was passed July 11, 1887, ordaining and enacting that Negley avenue be located by certain designated courses and distances and of a width of fifty-seven feet.   Another ordinance was enacted December 27, 1887, relocating the avenue for a portion of its distance, also by courses and distances expressed in the ordinance.   On the 12th of March, 1888, an ordinance was enacted authorizing and directing the city engineer to survey and open Negley avenue from Bryant street, at a width of fifty-seven feet in accordance with the plan on file in the city engineer's office, in pursuance of the ordinance of December 27, 1887.   Thereupon viewers, appointed by the court of common pleas of Allegheny county, and authorized by the ordinance of March 12, 1888, proceeded, after due notice to all parties interested, to assess the damages and benefits occasioned by the opening of the street, and made report of their proceedings in that regard, stating the damages they had ascertained to be suffered by property owners whose lands were taken, and the benefits conferred upon other landowners to whom the opening of the street was an advantage.   This report was made on November 17, 1888, and was accompanied by a carefully prepared draft showing the location of Negley avenue from Bryant street to Butler street, with the names of the owners along the line and the boundaries of their several properties, and this draft or plan was duly read and approved in common council on November 26, 1888, and in select council on December 10, 1888.   After this was done all the owners who were assessed for benefits, including Alexander King, the father of the present plaintiffs, paid into the city treasury the several amounts assessed against them, and the city thereupon paid to all the property owners who had sustained damages by the opening of the street the full amounts of the sums awarded to them respectively.

The defendant was duly authorized by its charter and by ordinance of the city councils to lay its pipes in and upon the streets of the city.   When they were about to lay them they applied to the chief of the department of public works of the city of Pittsburgh, to receive instructions as to where they should lay their pipes in this part of the city.   According to the undisputed testimony before the master, he directed that they should go through, and occupy Negley avenue for that

purpose, assuring the defendant that the street was opened, and that they could occupy it for that purpose. In pursuance of this instruction they surveyed and located the line upon which to lay their pipes through this street, and did lay them accordingly. At that time no question was raised as to the legality of their action. The constitutionality of the law of June 14, 1887, P. L. 386, had not then been called in question. The pipes were laid in the fall of 1889 and it was not until January 22, 1891, that a proceeding in the courts was commenced to test the validity of the act of 1887. The report of the board of viewers was never questioned or contested by exceptions, appeal, or in any other manner. The fences crossing the line of the new street were not removed by the city authorities, and the street was not thrown open to travel at the time the defendant laid its pipes, but in all other respects the proceedings for laying out and opening the street were completed and had been so since December, 1888.

It is now objected against the legality of the action of the defendant in laying its pipes, that the city government had no power to proceed in the opening of this street, because the act of 1887 was unconstitutional in certain respects. However this contention might suffice to prevent the city from laying out and opening streets in the future, it does not follow by any means that it will suffice to overthrow such work previously done under color of the authority conferred by the act. If no question of the constitutional power of a city to do municipal work, such as the opening or grading and paving of streets, the construction of drains and sewers, the erection of municipal buildings, the introduction of gas and water works, arises until years have elapsed after such work is done, it could not be tolerated that because the power is ultimately held to have been in excess of the lawful authority of the city, that such streets must be closed and abandoned, or the sewers and drains destroyed, or the gas and water works closed, or the municipal buildings torn down. Such municipal works having been done under color of lawful authority, when no question as to the validity of the authority was raised, must be regarded as lawfully done. The opening of a street ordinarily is followed by the erection of buildings on both sides, by the laying of gas and water pipes, and the construction of sewers.

If after all this has taken place, it is discovered, and judicially decided, that the law under which the municipal authorities have acted in the premises, is unconstitutional, surely it cannot be that all the improvements, works and buildings, carried on and constructed under apparent legal authority, must be abandoned or destroyed.

There is a very well established principle applicable to such cases, which holds valid the acts done by persons exercising official functions, by virtue of legislative authority, which is subsequently declared void. Thus in Clark v. The Commonwealth, 29 Pa. 129, where a person had been convicted of murder in the first degree, and had pleaded to the jurisdiction of the court that tried and sentenced him, that the presiding judge had not been lawfully elected under the provisions of the constitution, we held that the title of the judge to his office could not be called in question by a private suitor, but only by the commonwealth, that he was a judge de facto, and as against all parties but the commonwealth a judge de jure also. It was said by Mr. Justice WOODWARD, in delivering the opinion, that, " the notion that the functions of a public officer, or of a corporation existing by authority of law, can be drawn in question (I do not mean as to the mode of their exercise, but as to their right of existence), except at the pleasure of the sovereign is a mistake that springs from the too prevalent misconception that it is the duty of everybody to attend to public affairs."

In Campbell v. The Commonwealth, 96 Pa. 344, in an indictment for arson, a question was raised in this court as to the title of the two associate judges to their office under the constitution of 1874. The defendants were convicted and sentenced, and in this court they claimed that the oyer and terminer which sentenced them was not a legally constituted court, but we declined to entertain the question on the ground that the associates were judges de facto. Mr. Justice MERCUR said: " Under due forms of law they hold their offices by title regular on its face. They are performing the duties thereby imposed on them and enjoying the profits and emoluments thereof. Thus they are judges de facto, and as against all parties but the commonwealth are judges de jure. Having at least a colorable title to these offices their right thereto cannot be questioned in any

other form than by a quo warranto at the suit of the common-wealth."

In Keyser v. McKissan, 2 Rawle, 139, the action was brought by the commissioners of a county against the county treasurer and his sureties on the treasurer's bond, and it was alleged in defence that the plaintiffs had never taken the oath of office required by law, and were therefore disqualified to act in their official capacity, or to maintain the action. ROGERS, J., conceding that the oaths were never taken, said : " The rule which governs the case is, that the commissioners who appointed the treasurer were officers de facto, since they came into their office by color of title. It is a well settled principle of law that the acts of such persons are valid when they concern the public, or the rights of third persons who have an interest in the act done : The People v. Collins, 7 Johns. Rep. 554 ; King v. Lisle, Andrews' Rep. 163. And this rule has been adopted to prevent a failure of justice. . . . The reason given for the rule is most satisfactory. That the act of an officer de facto where it is for his own benefit is void, because he shall not take advantage of his want of title, which he must be cognizant of; but where it is for the benefit of strangers or the public who are presumed to be ignorant of such defect of title, it is good : Cro. Eliz. 699 ; King v. Lisle, Andrews' Rep. 163; Hippsly v. Tucke, 2 Lev. 184."

In Riddle v. The County of Bedford, 7 S. & R. 386, this court said, DUNCAN, J.: " There are many acts done by an officer de facto which are valid. They are good as to strangers, and all those persons who are not bound to look further than that the person is in the actual exercise of the office, without investigating his title."

To the same effect are Kingsbury v. Ledyard, 2 W. & S. 41, and Gregg Township v. Jamison, 55 Pa. 468.

Applying these principles to the present case it will be seen that the proceedings for the extension and opening of Negley avenue were conducted in a regular and orderly manner, by the select and common councils of the city of Pittsburgh, who were officials in the actual exercise of their functions. One of the instrumentalities employed was the board of viewers, who were also the properly constituted officers for that purpose, according to the law supposed to be applicable to the case.

These several officials acting in their official capacity carried through to completion all the proceedings necessary to the extension and opening of the avenue for public use. The councils in their official capacity gave consent to the occupancy of the avenue by the defendant for the purpose of laying their pipes. The chief of the department of public works, the proper officer for that purpose, not only gave consent, but gave directions to the defendant, to occupy Negley avenue in laying its pipes. All of these officials held their offices and exercised their functions so far as the proceedings in regard to the extension and opening of Negley avenue were concerned, in strict conformity with the law as it was written. With those proceedings the defendant had nothing to do, but, acting in perfectly good faith, so far as appears upon this record, did the acts complained of in the plaintiffs' bill in the matter of laying their pipes. In our opinion it is not practicable to hold that their acts in the premises were entirely illegal and void. They were not responsible for the law as it stood, nor were they responsible for errors or defects, if there were any, in the exercise of the official functions of the several city officials. They had a right to assume that the officials whose action was involved were legally constituted officials, with full power to do just what they did do, with regard to the subject of the present contention.

Nor, even if there were some defects in the manner in which the pipes were laid, would those defects suffice to invalidate the entire action of the defendant in laying their pipes. The defendant can easily be compelled to relay any portions of its pipes which are defectively laid. We do not consider that any question of estoppel arises against the plaintiff by reason of the payment by him of the assessed benefits. We decide the case upon the ground that there was a compliance with the existing law in the laying of the pipes, and that the defendant is not responsible for the law of 1887, or for its want of conformity to the constitution. Acting within the limits of that law and by the sanction of the properly constituted officials, who were officers de facto in the exercise of their official functions, they are protected from an allegation of illegality in their action.

Decree reversed and bill dismissed at the costs of the plaintiffs.