578 A.2d 1

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Jeffrey PONTIOUS, Appellee.**

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Michelle HAWLEY, Appellee.**

Superior Court of Pennsylvania.

Argued March 30, 1990.

Filed July 5, 1990.

16

Douglas J. Wright, Asst. Dist. Atty., Girard, for Com.

Daniel J. Kuhn, Union City, for appellees.

Before CIRILLO, President Judge, and WIEAND, McEWEN, MONTEMURO, BECK, KELLY, JOHNSON, HUDOCK and FORD ELLIOTT, JJ., En Banc.

BECK, Judge:

This is a consolidated appeal by the Commonwealth from orders suppressing evidence that was obtained by a police officer after arresting motorists for driving under the influence. At issue is whether the trial court properly suppressed evidence on the ground that the arresting officer had been hired in violation of a civil service law. We find that the appellee motorists do not have standing to challenge the alleged violation of civil service law, and therefore reverse the trial court.

The essential facts are not in dispute. John E. Kerr of the Union City Police Department saw appellee Jeffery E. Pontious drive through a stop sign in Union City, Pennsylvania. After ordering Pontious to stop, Officer Kerr noticed that Pontious had a strong odor of alcohol on his breath. Kerr asked Pontious to perform two sobriety tests; Pontious failed both. Pontious also submitted to a chemical test that indicated that his blood alcohol content was .354%. Kerr then placed Pontious under arrest for driving under the influence.

On a separate occasion, Kerr observed appellee Michelle A. Hawley operating a vehicle in an erratic manner also in Union City. Hawley made an improper left turn, crossed the center line of the roadway twice, and nearly struck a bridge abutment and a utility pole. Kerr stopped Hawley and noticed a strong odor of alcohol on her breath. Hawley failed two sobriety tests, and she submitted to a chemical test that yielded a blood alcohol content reading of .212%.

Kerr then placed Hawley under arrest for driving under the influence.

Appellees retained the same defense counsel, and defense counsel filed suppression motions. In support of these motions, counsel alleged that Officer Kerr had been hired in violation of the Borough Code [1]. The civil service subdivision of the Borough Code provides in part: "each and every appointment to and promotion in the police force ... paid directly by the borough in every borough shall be made only according to qualifications and fitness, to be ascertained by examinations which shall be competitive...." Pa.Stat.Ann title 53 § 46171. A Union City Ordinance further provides that the chief of police and all subordinate policemen shall be appointed subject to the civil service provisions of the Borough Code. All parties stipulated that the Borough of Union City had hired Kerr without first administering a civil service examination.

After entertaining argument, the trial court concluded that Kerr did not qualify under any of five statutory exceptions to the civil service requirement.[2] The court therefore reasoned that Kerr's failure to take a competitive examination deprived him of lawful authority to arrest the appellees. As a consequence, the court entered orders suppressing all evidence obtained by Kerr as the fruit of unlawful arrests. The Commonwealth filed timely appeals of the suppression orders and the appeals were consolidated. Since the Commonwealth certifies in good faith that

1. Pa.Stat.Ann. title 53 §§ 45101–48501 (Purdon 1966 & Supp.1989).

2. The civil service requirement applies to appointments to the police force. The term "police force" does not include the following five categories of police employees:

> (1) Any special police appointed by the mayor to act in emergencies,
> (2) Any person appointed solely for parking meter enforcement duties,
> (3) Any special school police,
> (4) Any extra police serving from time to time or on an hourly or daily basis, or,
> (5) Any auxiliary policeman appointed under the act of January 14, 1952 (P.L. 2016).

Pa.Stat.Ann. title 53 § 46195 (footnote omitted).

the suppression orders if given effect would substantially handicap or terminate its prosecutions, we have jurisdiction to entertain this consolidated appeal. *Commonwealth v. Toanone,* 381 Pa.Super. 336, 338–40, 553 A.2d 998, 999 (1989).

■ Three issues are before us on appeal. First, do criminal defendants have standing to question whether an arresting officer was hired in compliance with civil service requirements? Second, did the trial court correctly interpret the civil service statute when it held that Officer Kerr was not properly hired? Third, is an order suppressing evidence an appropriate remedy for a civil service law violation? We find that appellees do not have standing to question whether Kerr was properly employed by the police department. Accordingly, we shall not address the statutory interpretation issue and the suppression issue.

■ In order for a party to have standing to challenge an official order or action, she must be aggrieved in that her rights have been invaded or infringed. *South Whitehall Township Police Service v. South Whitehall Township,* 521 Pa. 82, 86–87, 555 A.2d 793, 795 (1989); *Commonwealth v. Russell,* 225 Pa.Super. 133, 136–37, 310 A.2d 296, 297–98 (1973).

■ The question then arises as to whether appellees were aggrieved or their rights invaded because Officer Kerr was allegedly not hired in compliance with the civil service law. Appellees assert that their arrest was illegal because Officer Kerr's appointment to the police department was improper. They claim their standing is derived from a general right to be free from illegal arrests. This argument is based on the false premise that every act performed by a public official who was not properly hired is invalid. This is not the case. Even if Kerr was illegally hired, his arrests of the appellees were not illegal. The improper hiring by itself cannot convert a legal arrest into an illegal one. If the improper hiring caused the arrests to

be illegal, certainly appellees would then have standing to challenge the hiring itself.

Case law supports that conclusion that Kerr had de facto authority to carry out lawful arrests.

As the Pennsylvania Supreme Court has noted:

A person in possession of an office and discharging its duties under the color of authority,—that is, authority derived from an election or appointment however irregular or informal, so that the incumbent be not a mere volunteer,—is a de facto officer, and his acts are good so far as respects the public; attacks upon the right of such incumbent to serve must be instituted by the Commonwealth in a direct proceeding for that purpose and cannot be made collaterally: *King v. Philadelphia Co.*, 154 Pa. 160, 168, 169, 26 A. 308, 309, 310; *Krickbaum's Contested Election*, 221 Pa. 521, 526, 527, 70 A. 852, 854; *Commonwealth ex rel. Raker v. Snyder*, 294 Pa. 555, 559, 144 A. 748, 749; *Commonwealth ex. rel Palermo v. Pittsburgh*, 339 Pa. 173, 177, 178, 13 A.2d 24, 26; *Commonwealth ex rel. McCreary v. Major*, 343 Pa. 355, 364, 22 A.2d 686, 690, 691; *Commonwealth v. Brownmiller*, 141 Pa.Superior Ct. 107, 112, 113, 14 A.2d 907, 910.

*Pleasant Hills Borough v. Jefferson Township*, 359 Pa. 509, 512–13, 59 A.2d 697, 699–700 (1948).

[This] doctrine springs from an understandable fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question. "If the question [of right to office] may be raised by one private suitor it may be raised by all, and the administration of justice would under such circumstances prove a failure." *Coyle v. Commonwealth*, 104 Pa. 117, 130 (1884). The *de facto* doctrine seeks to protect the public by ensuring the orderly functioning of the government despite technical defects in title to office.

*State Dental Council and Examining Bd. v. Pollack*, 457 Pa. 264, 268, 318 A.2d 910, 913 (1974).

Under the de facto doctrine, a law enforcement officer hired in violation of the law may legitimately exercise search and seizure powers. *See Commonwealth v. Field,* 120 Pa.Super. 397, 183 A. 78 (1936) (official appointed by court pursuant to potentially unconstitutional statute was de facto peace officer with power to arrest); *Appeal of Kahle,* 112 Pa.Commw. 402, 403–05, 535 A.2d 304, 305 (1988) (dictum) (police officer sworn in by supervisor who lacked authority to administer oath of office had power to arrest). *As long as the officer acts under color of authority, her acts are good as respects the public. Pleasant Hills Borough, supra.*[3] In the instant case, Kerr clearly was acting under color of authority as a Union City policeman when he arrested appellees while on duty as a police officer for crimes committed in his presence on the streets of Union City. Thus, the arrests were not illegal, and the trial court erred by suppressing evidence as the fruit of illegal arrests.[4]

**3.** Of course, an unlawfully hired police officer acting under color of law has no greater power to arrest than a lawfully hired police officer. A defendant may challenge the legality of his arrest on the ground that anyone occupying the position of the arresting officer, whether properly or improperly employed, would not have authority to conduct the arrest. This would be the case if, for example, a police officer conducted an arrest outside her primary jurisdiction in violation of section 8953 of the Municipal Police Jurisdiction Act. 42 Pa.Cons.Stat.Ann. § 8951–54 (Purdon 1982 & Supp.1989). *See generally Commonwealth v. O'Shea,* 523 Pa. 384, 392–00, 567 A.2d 1023, 1027–1030 (1989) (discussing availability of suppression as remedy for violations of territorial restrictions on search and seizure powers).

**4.** We acknowledge that in two cases this court upheld orders granting relief on the grounds that defendants were not arrested by bona fide police officers. In *Commonwealth v. Ward,* 235 Pa.Super. 558, 344 A.2d 650 (1975), and *Commonwealth v. Brenneman,* 236 Pa.Super. 120, 344 A.2d 564 (1975), the defendants were arrested by persons who had been designated as auxiliary police officers. Under Pennsylvania law an auxiliary police officer may not be called to duty except during periods of distress, disaster, or emergency. *See* Pa.Stat.Ann. tit. 53 § 734. No special exigency justified placing the auxiliary officers on active duty. A majority of the court concluded in *Ward* and *Brenneman* that the auxiliary officers could not lawfully place the defendants in custody and that evidence obtained by the officers could not be admitted at trial. In reaching this conclusion, the majority failed to consider the de facto authority doctrine. We now recognize that a person who is improperly called to duty as a police officer may have de facto authority to conduct an arrest. To the extent that *Ward*

22

In conclusion, we hold that appellees do not have standing to litigate the question of whether their arresting officer was hired in accordance with the civil service law. By doing so, we do not deny the importance of the law or condone any evasion of its provisions. The appellate courts of this state will act to ensure compliance with the civil service subdivision of the Borough Code if the issue is raised in an appropriate proceeding. Appropriate proceedings may include suits by police officers whose employment conditions are adversely effected by violations of the Code, as well as criminal actions against local government officials who wrongfully hire applicants without the use of civil service examinations.[5] We decide only that a suppression hearing is not an appropriate forum for an inquiry into compliance with civil service requirements.

Orders reversed and cases remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.

---

and *Brenneman* automatically require the suppression of evidence seized by improperly employed policemen, those cases are overruled.

5. The civil service subdivision of the Borough Code contains the following language:
Any councilman who, by his vote, causes to be appointed any person to the police force or as a fire apparatus operator contrary to the provisions of this subdivision, or any councilman or member of the [civil service] commission who willfully refuses to comply with, or conform to, the provisions of subdivision (j) of this article, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be sentenced to pay a fine not exceeding one hundred dollars ($100), or suffer imprisonment not exceeding three months, or both.
Pa.Stat.Ann. title 53 § 46194 (footnote omitted).