COMMONWEALTH of Pennsylvania, Appellee

v.

Kenneth Carl CRAWFORD and David Lee Hanley and Cypress Media, d/b/a The Times Leader and Terrie Morgan Besecker.

Appeal of Cypress Media, d/b/a The Times Leader and Terrie Morgan Besecker.

Superior Court of Pennsylvania.

Submitted Aug. 27, 2001.

Filed Dec. 27, 2001.

Jonathan Blum, Wilkes-Barre, for appellants.

William Ruzzo, Wilkes-Barre, for Hanley, appellee.

Peter J. Savage, Wilkes-Barre, for Crawford, appellee.

David W. Lupas, Asst. Dist. Atty., Wilkes-Barre, for the Com., appellee.

Before: DEL SOLE, President Judge, CAVANAUGH, J. and CERCONE, President Judge Emeritus.

DEL SOLE, President Judge:

¶ 1 This appeal lies from two provisions of an order entered September 27, 2000, in the Court of Common Pleas of Luzerne County. The first denies the media Appellants' petition to vacate or modify a previous order which prohibited all persons connected with the underlying criminal case in any capacity from making extrajudicial statements "which are likely or might possibly interfere with the rights of the Defendants or the Commonwealth to a fair and impartial trial," and the second denies the media Appellants access to a Commonwealth brief filed after defense counsel moved to quash a notice of aggravating circumstances.

¶ 2 The underlying criminal matter which gave rise to these proceedings involves a double murder committed by two defendants, Kenneth Crawford and David Lee Hanley, during the course of a robbery. In both instances, the Commonwealth filed a Notice of Aggravating Cir-cumstances, indicating its intention to seek the death penalty. Thereafter, in return for a plea of guilty, Hanley was sentenced to consecutive life sentences. The question then arose whether, because of Crawford's age, 15 at the time of the murder, the death penalty was applicable. The defense moved to quash the Notice, and briefs were ordered by the court for use in its deliberations on the question. At the same time, the restraining order was entered. Appellants herein, Cypress Media, d/b/a The Times Leader, and its reporter, Terrie Morgan Besecker, sought access as intervenors to the Commonwealth's brief, and petitioned to have the prior restraint order modified or vacated, alleging First and Fourteenth Amendment violations, as well as violations of the Pennsylvania Constitution, various state and federal statutes and the common law. After a hearing, the trial court refused Appellants' requests, and this appeal followed.

¶ 3 Two issues are presented challenging first, the trial court's confirmation of the restrictive order, and second, its refusal to allow Appellants access to the Commonwealth's brief in favor of applying the death penalty to a 15-year-old. Before assessing the merits of Appellants' claims, however, we must determine their appealability.

¶ 4 As to the first issue, this Court's decision in *Commonwealth v. Lambert*, 723 A.2d 684 (Pa.Super.1998), is controlling. There the media appellants contested a detailed and extensive "gag" order[1] as violative of the First Amendment and otherwise unconstitutionally vague. Given the nature of the order, the issues involved, that is, freedom of speech and of the press, and the potential loss of the

---

1. Both in *Lambert* and in the instant case, the trial courts dispute the propriety of the term "gag" order.

issue by postponement of judgment, we held that the matter was appealable under the collateral order exception to the final judgment rule. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 348 A.2d 734 (1975); Pa.R.A.P. 313.[2] Considering the similarity of the order at issue here, we find that *Lambert* controls as to appealability.

■ ¶ 5 However, our inquiry does not end there. We must also determine whether Appellants have standing to challenge the trial court's order. "The question of standing is rooted in the notion that for a party to maintain a challenge to an official order or action, he must be aggrieved in that his rights have been invaded or infringed." *Franklin Township v. Commonwealth, Dep't of Envtl. Res.*, 500 Pa. 1, 452 A.2d 718, 719 (1982).

■ ¶ 6 Although the issue of standing has not been discussed in previous cases involving media challenges to restrictive court orders, we note that in those cases, the media appellants were either specifically named in the order, or granted intervenor status by the trial court. *See Nebraska Press Assoc. v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); *Commonwealth v. Hayes*, 489 Pa. 419, 414 A.2d 318 (1980), *cert. denied*, 449 U.S. 992, 101 S.Ct. 528, 66 L.Ed.2d 289 (1980); *Commonwealth v. Lambert*, 723 A.2d 684 (Pa.Super.1998); *Commonwealth v. Buehl*, 316 Pa.Super. 215, 462 A.2d 1316 (1983). It is important to note here that the trial

court denied not only Appellants' petition to vacate or modify its "gag" order, but also their petition to intervene:

> In summary, we find the Order does not apply to [Appellants] and does not infringe upon or in any way violate a constitutional, statutory or procedural right of the Times Leader or its reporter which warrants or justifies their intervention to question the validity of our Order.

Trial Court Opinion at 10. When Appellants' petition to intervene was denied, their recourse was to argue on appeal that the trial court erred in failing to grant them intervenor status. *See Capital Cities Media, Inc. v. Toole*, 506 Pa. 12, 483 A.2d 1339, 1344 (1984) ("An order denying leave to intervene in these sensitive circumstances is immediately appealable.") This, however, they have failed to do. Thus, any challenge to the court's denial of intervenor status is waived.[3]

■ ¶ 7 Moreover, we find that Appellants have no alternate source of standing to challenge the court's "gag" order. In order to have standing to challenge a court order, an appellant must have a substantial, immediate and direct interest in the subject matter of the litigation. *Ken R. on Behalf of C.R. v. Arthur Z.*, 546 Pa. 49, 682 A.2d 1267, 1270 (1996).

> A "substantial" interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law. A "direct" interest requires a showing that the matter complained of caused

---

**2.** Pa.R.A.P. 313 reads as follows:

A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

**3.** Because Appellants were not permitted to intervene, we need not determine whether intervenor status automatically bestows standing upon the intervenor to appeal a disputed lower court order.

harm to the party's interest. An "immediate" interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it, and is shown where the interest the party seeks to protect is within the zone of interests sought to be protected by the statute or constitutional guarantee in question.

*South Whitehall Township Police Serv. v. South Whitehall Township*, 521 Pa. 82, 555 A.2d 793, 795 (1989) (citations omitted).

■■■ ¶ 8 In the present case, Appellants do not have a substantial interest in the subject matter which outweighs the interests of citizens in general. Indeed, "[a]ccess rights of the news media, and of the general public, are identical in scope." *Commonwealth v. Fenstermaker*, 515 Pa. 501, 530 A.2d 414, 416 n. 1 (1987). *See also Stenger v. Lehigh Valley Hosp. Ctr.*, 382 Pa.Super. 75, 554 A.2d 954, 957 (1989) ("... the media has no greater right of access to any judicial proceeding or document than does any other citizen.") Appellants also do not have a direct interest in the subject matter as the "gag" order did not restrict media coverage of the proceedings or prevent reporters from questioning the attorneys. Moreover, it did not even restrict the attorneys from speaking to the media; it "merely prohibits extra judicial statements which are likely or might possibly interfere with the rights of the Defendants and the Commonwealth to a fair and impartial trial." Trial Court Opinion, 8/6/01, at 5. Lacking either a substantial or direct interest, Appellants also are unable to demonstrate an immediate injury caused by the order. Therefore, we conclude that Appellants have no standing to challenge the court's "gag" order.

¶ 9 With respect to the provision of the September 27 Order, denying Appellants access to the Commonwealth's pretrial brief, the conclusion of appealability remains constant. Analyzed under the precepts of Rule 313, we first note that the issue is unquestionably separate from and collateral to the underlying case, a finding supported by the criminal appellant's communication to our Court declining to file a brief in this matter. The claimed right of public access to the document, which involves an important matter of public concern, the applicability of the death penalty to juveniles, is similarly too important to evade review. Finally, disposition of the criminal trial would result in irreparable loss of the issue, as Appellants would be unable to appeal from any judgment of sentence handed down in the underlying matter. Moreover, since the order applies specifically to Appellants, we find that they have standing to contest the court's decision.

■■■ ¶ 10 The trial court denied Appellants access to the Commonwealth's brief because it concluded that the brief was not a public record. Trial Court Opinion at 18. We agree. "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) (footnotes omitted). The fundamental question, therefore, is "whether the documents sought to be disclosed constitute public judicial documents, for not all writings connected with judicial proceedings constitute public judicial documents." *Fenstermaker*, 530 A.2d at 418.

¶ 11 In the present case, Appellants conceded in their Petition to Intervene that the Commonwealth's brief was not "filed of record." Petition to Intervene and Request for Relief, at ¶ 4. However, they argue in their brief that this fact is not dispositive. Citing *Fenstermaker* for support, Appellants contend that they should have been

granted access to the brief because it was a document the judge relied upon to determine the applicability of the death penalty in this case and public policy concerns favor an open criminal justice system. *See* Appellants' Brief at 13–14.

¶ 12 We agree that our Supreme Court's decision in *Fenstermaker* provides important insight into determining what documents, in a criminal trial, the media have a right to inspect. In that case, the media defendants sought access to affidavits of probable cause supporting the issuance of arrest warrants. The Court noted that documents such as probable cause affidavits filed with magistrates are "judicial documents" since magistrates are integral to this Commonwealth's unified judicial system. *Id.* at 418. Moreover, the Court concluded that the documents are "clearly judicial in character" since the information contained therein is critical to a magistrate's determination of whether probable cause to arrest exists. *Id.* The Court also found significant the fact that probable cause affidavits are eventually filed with the trial court and become part of the permanent record. *Id.* Thus, the Supreme Court held that "the affidavits in question cannot be regarded as private documents, but rather must be taken to be part of the official public case record." *Id.* at 419.

■ ¶ 13 Conversely, in the present case, Appellants sought access to a Commonwealth brief that was presented only to the judge and defense counsel. It was not docketed, formally filed with the court, or required by any rule of criminal procedure. Indeed, it is not part of the certified record on appeal. Although we agree that the trial court may have reviewed it in determining whether Crawford could be sentenced to death, ultimately the reasoning for any decision is contained in the trial court's decision. Thus, we conclude that it was not a public record.

¶ 14 Because we conclude that Appellants have no standing to challenge that portion of the trial court's September 27, 2000, Order denying their petition to vacate or modify the court's previous "gag" order, we dismiss that portion of this appeal. With respect to the second provision of the order, which denied Appellants access to the Commonwealth's brief, we affirm.

¶ 15 Appeal dismissed in part; order affirmed.