**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Paul FINLEY, Jr., Appellee.**

Superior Court of Pennsylvania.

Submitted May 10, 2004.

Filed Sept. 9, 2004.

Reargument Denied Nov. 10, 2004.

---

David W. Lupas, Assistant District Attorney, Wilkes–Barre, for Commonwealth, appellant.

Mark W. Bufalino, West Pittston, for appellee.

Before: LALLY–GREEN, GANTMAN, and KELLY, JJ.

GANTMAN, J.:

¶ 1 Appellant, the Commonwealth of Pennsylvania ("the Commonwealth"), asks us to determine whether the trial court erred in granting a motion to quash and dismissing the criminal information filed against Appellee, Paul Finley Jr. Specifically, the Commonwealth asserts Appellee lacked standing to challenge the validity of the criminal information and the legality of his arrest, based upon the arresting officer's lack of "certification" as a law enforcement official. The Commonwealth also asserts Appellee's arrest was lawful. We hold Appellee lacked standing to challenge his criminal information on this ground, his arrest was lawful, and the trial court erred in granting the motion to quash and dismissing the criminal information. Accordingly, we reverse and remand for further proceedings.

¶ 2 The relevant facts and procedural history of this case are as follows. On July 7, 2002, Officer Charles Musial of the Harvey's Lake Borough Police Department executed a traffic stop of the vehicle Appellee was operating on State Route 1415 in Harvey's Lake Borough. After detecting the odor of alcohol emanating from Appellee, Officer Musial asked him to perform field sobriety tests. Subsequent to failing the field sobriety tests, Appellee was arrested and initially charged with two counts of driving under the influence of alcohol or controlled substance ("DUI"),[1] and the summary offenses of careless driving[2] and driving on right side of roadway.[3]

¶ 3 On January 13, 2003, the Luzerne County District Attorney filed an approved information charging Appellee with the two counts of DUI and the summary offense of driving on right side of roadway.[4] Prior to trial, Appellee discovered Officer

---

1. 75 Pa.C.S.A. § 3731(a)(1) and (a)(4)(i). We note this statute was repealed by 2003, September 30, P.L. 120, No. 24, § 14, effective February 1, 2004. The new DUI statute is found at 75 Pa.C.S.A. § 3802.

2. 75 Pa.C.S.A. § 3714.

3. 75 Pa.C.S.A. § 3301(a).

4. The approved information does not include the summary offense of careless driving at 75 Pa.C.S.A. § 3714.

Musial was not certified by the Municipal Police Officer Education and Training Commission at the time of Appellee's traffic stop and arrest.[5]  On March 31, 2003, Appellee filed a motion to quash the information.  On October 6, 2003, the court granted Appellee's motion to quash and dismissed the criminal information against him.  This timely appeal followed.

¶ 4 The Commonwealth presents the following issue for our review:

DID THE [TRIAL] COURT ABUSE ITS DISCRETION IN GRANTING A MOTION TO QUASH A CRIMINAL INFORMATION BASED ON A PO-LICE OFFICER'S FAILURE TO OB-TAIN CERTIFICATION, DESPITE [APPELLEE]'S LACK OF STAND-ING TO CHALLENGE THE OFFI-CER'S AUTHORITY?

(The Commonwealth's Brief at 4).

■ ¶ 5 Our standard of review is subject to the following principles:

The decision to grant a motion to quash a criminal information or indictment is within the sound discretion of the trial judge and will be reversed on appeal only where there has been a clear abuse of discretion.

*Commonwealth v. Lebron,* 765 A.2d 293, 294 (Pa.Super.2000), *appeal denied,* 567 Pa. 722, 786 A.2d 986 (2001) (citations and quotation marks omitted).

Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration.

*Commonwealth v. Krick,* 164 Pa.Super. 516, 67 A.2d 746, 749 (1949).  "Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or [rules] in a manner lacking reason." *Coolbaugh v. Com., Dept.*

*of Transp.,* 816 A.2d 307, 310 (Pa.Super.2003).

■ ¶ 6 Additionally, we note:

A motion to quash is an appropriate means for raising defects apparent on the face of the information or other defects which would prevent prosecution.  It is neither a guilt determining procedure nor a pre-trial means for determining the sufficiency of the Commonwealth's evidence.  Neither the adequacy nor competency of the Commonwealth's evidence can be tested by a motion to quash the information.

*Commonwealth v. Shaffer,* 384 Pa.Super. 182, 557 A.2d 1106, 1106–07 (1989) (citations omitted).  An arrest in the absence of statutory authority implicates the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution.  *Commonwealth v. Kiner,* 697 A.2d 262, 268 (Pa.Super.1997).  "The remedy for a violation of the Fourth Amendment is exclusion of all evidence that is the fruit of that violation." *Commonwealth v. Carter,* 537 Pa. 233, 248, 643 A.2d 61, 68 (1994), *cert denied,* 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995).  *See, e.g., Commonwealth v. Sadvari,* 561 Pa. 588, 752 A.2d 393 (2000) (addressing propriety of extraterritorial arrest and suppression of evidence resulting from that arrest).  "Quashal is not an appropriate remedy for an illegal arrest. ... Thus, the fact that an arrest was unlawful alone in no way implicates the sufficiency of the Commonwealth's *prima facie* case and is no basis for quashing an information." *Commonwealth v. Hamme,* 400 Pa.Super. 537, 583 A.2d 1245, 1246 n. 2 (1990).

¶ 7 The Commonwealth argues Appellee lacked standing to challenge Officer Musial's certification as a law enforcement

5.  *See* 53 Pa.C.S.A. § 2167.

officer. Specifically, the Commonwealth contends an arrestee does not have standing to challenge the authority of a police officer, acting under the color of authority, on the ground that the officer is not "certified." Applying the *de facto* doctrine, the Commonwealth submits Officer Musial was acting under color of authority as a police officer and, with respect to the public at large, he could legitimately exercise search and seizure powers. Officer Musial had completed all the necessary training for police officers in this jurisdiction, and had the authority to conduct a lawful arrest, although he was not yet certified. Therefore, Officer Musial's lack of certification does not provide Appellee with grounds to challenge the validity of the criminal information or dispute the legality of his arrest. The Commonwealth concludes the trial court erred in granting Appellee's motion to quash and dismissing the criminal information against him. We agree.[6]

¶ 8 Appellee argues police officers in the Commonwealth of Pennsylvania are required by statute to be certified before they can act in a law enforcement capacity.[7] Appellee insists that a police officer without certification is not really a "police officer" at all and lacks statutory authority to enforce criminal laws and moving traffic violations, or carry a weapon.[8] Appellee maintains "Mr. Musial" was not certified; as such, he had no statutory authority to execute Appellee's arrest. Appellee concludes his arrest was unlawful, and the criminal information against him was properly dismissed. We disagree.

¶ 9 Prevailing Pennsylvania law provides that if standing to contest the action is not derived from the statute in question, we must determine whether there is any other basis to challenge an official action. *Commonwealth v. J.H.*, 563 Pa. 248, 251–52, 759 A.2d 1269, 1271 (2000).

> In order to have standing to challenge an official order or action, a party must be aggrieved by the action or order. For a party to be aggrieved, it must have a substantial, direct, immediate, and not remote interest in the subject-matter of the litigation.

*Id.* (citations omitted).

> A "substantial" interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law. A "direct" interest requires a showing that the matter complained of caused harm to the party's interest. An "immediate" interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it, and is shown where the interest the party seeks to protect is within the zone of interests sought to be protected by the statute or constitutional guarantee in question.

*Commonwealth v. Crawford*, 789 A.2d 266, 269–270 (Pa.Super.2001) (quoting *South Whitehall Tp. Police Service v. South Whitehall Tp.*, 521 Pa. 82, 555 A.2d 793, 795 (1989)). The core concept of standing is that a person, who is not adversely affected in any way by the matter he seeks to challenge, is not aggrieved thereby, and has no right to obtain a judicial resolution of his challenge. *In re T.J.*, 559 Pa. 118,

---

**6.** Because suppression of the evidence, not quashal of the information and dismissal of the charges, is the appropriate remedy for an unlawful arrest, we could reverse the trial court's order on this basis. *See Hamme, supra.* The Commonwealth, however, does not make this procedural argument. Therefore, we decline to dispose of the appeal on this basis.

**7.** 53 Pa.C.S.A. §§ 2161 and 2167.

**8.** *Id.*

739 A.2d 478 (1999). Thus, the inquiry is whether the party making the challenge is the proper person to make the legal challenge in the matter. *In re Hickson,* 765 A.2d 372 (Pa.Super.2000), *affirmed,* 573 Pa. 127, 821 A.2d 1238 (2003).

¶ 10 Quoting the Pennsylvania Supreme Court, this Court has explained the *de facto* doctrine as follows:

A person in possession of an office and discharging its duties under the color of authority,—that is, authority derived from an election or appointment however irregular or informal, so that the incumbent be not a mere volunteer,—is a *de facto* officer, and his acts are good so far as respects the public; attacks upon the right of such an incumbent to serve must be instituted by the Commonwealth in a direct proceeding for that purpose and cannot be made collaterally[.]

*Commonwealth v. Pontious,* 396 Pa.Super. 15, 578 A.2d 1, 3 (1990) (*en banc* ) (quoting *Pleasant Hills Borough v. Jefferson Tp.,* 359 Pa. 509, 512–13, 59 A.2d 697, 699–700 (1948)) (internal citations omitted). The policy behind the *de facto* doctrine is:

[This] doctrine springs from an understandable fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question. "If the question [of right to office] may be raised by one private suitor it may be raised by all, and the administration of justice would under such circumstances prove a failure." The *de facto* doctrine seeks to protect the public by ensuring the order-

ly functioning of the government despite technical defects in title to office.

*Pontious, supra* at 3 (internal citation omitted).

¶ 11 In *Pontious,* a police officer witnessed a driver run a stop sign. After stopping the driver, the officer noticed the odor of alcohol on the driver's breath. The driver then failed two field sobriety tests and submitted to blood alcohol testing, which indicated he had a blood alcohol content of 0.354%. The officer arrested the driver for driving under the influence. On a separate occasion, the same police officer witnessed a different driver operating her vehicle in an erratic manner. After stopping this driver, the officer noticed the odor of alcohol on her breath and had her perform field sobriety tests, which she failed. Her blood alcohol test revealed a content of 0.212%, and she was arrested for driving under the influence.

¶ 12 Both drivers, now defendants, retained the same defense counsel, and filed motions to suppress the evidence gleaned from their respective traffic stops. In their motions, the defendants challenged the officer's lawful authority to arrest on the grounds that he had been hired improperly. The trial court found the officer had not been hired in compliance with the civil service law and, as such, he lacked lawful authority to arrest the defendants.[9] Consequently, in both cases the court suppressed all evidence as the fruit of an unlawful arrest.

¶ 13 On appeal, the Commonwealth raised three issues: (1) whether criminal defendants had standing to question if an arresting officer was hired in compliance

---

9. The civil service subdivision of the Borough Code at issue in *Pontious* provided in relevant part: "each and every appointment to and promotion in the police force...paid directly by the borough in every borough shall be made only according to qualifications and fitness, to be ascertained by examinations which shall be competitive...." 53 P.S. § 46171. In *Pontious,* all parties stipulated that the borough had hired the officer without first administering a civil service examination. *Id.* at 2.

with civil service requirements; (2) whether the trial court correctly interpreted the civil service statute; and, (3) whether an order suppressing evidence was the appropriate remedy for a civil service law violation? [10]

¶ 14 As to the standing issue, the question was whether the allegedly improper hiring of the officer had aggrieved the defendants or invaded their individual rights. The defendants claimed their standing was derived of their right to be free from illegal arrests, and they insisted the improper hiring of the officer rendered their arrests unlawful.

¶ 15 The *Pontious* Court reversed, holding criminal defendants lacked standing to litigate whether their arresting officer was in compliance with civil service requirements. In so doing, this Court recognized the *de facto* doctrine, which "seeks to protect the public by ensuring the orderly functioning of the government despite technical defects in title to office." *Id.* Applying the doctrine, the *Pontious* panel declared:

> Under the *de facto* doctrine, a law enforcement officer hired in violation of the law may legitimately exercise search and seizure powers. As long as the officer acts under color of authority, [his] acts are good as respects the public. In the instant case, [the arresting officer] was clearly acting under color of authority as a Union City policeman when he arrested [defendants] while on duty as a police officer for crimes committed in his presence on the streets of Union city. Thus, the arrests were not illegal, and the trial court erred by suppressing evidence as the fruit of illegal arrests.

*Id.* at 3–4 (emphasis in original) (internal citations and footnotes omitted). The *en banc* panel also overruled two prior decisions of this Court, *Commonwealth v. Ward*, 235 Pa.Super. 550, 344 A.2d 650 (1975), and *Commonwealth v. Brenneman*, 236 Pa.Super. 120, 344 A.2d 564 (1975), to the extent they "automatically require the suppression of evidence seized by improperly employed policeman." *Pontious, supra* at 4 n. 4 (stating, "We now recognize that a person who is improperly called to duty as a police officer may have *de facto* authority to conduct an arrest"). *Id.* at 2, 4.

¶ 16 In the instant case, Officer Musial had *de facto* authority to conduct a lawful arrest of Appellee. *See id.* He had completed all the necessary training for police officers in this jurisdiction. We reject the notion that the "hiring" issue in *Pontious* is distinguishable from the "certification" issue under review, for purposes of a challenge to Appellee's arrest. The hiring provision in *Pontious* and the certification provision in the present case are both in the nature of civil service requirements. Whether Officer Musial was "certified" under 53 Pa.C.S.A § 2167 does not substantially, directly, and immediately affect Appellee's individual constitutional rights. *See J.H., supra; Crawford, supra.* Thus, we conclude the analysis in *Pontious* applies instantly. With respect to Appellee's arrest, Officer Musial acted as a *de facto* officer, and his acts were good so far as respects Appellee. *See Pontious, supra.* Officer Musial's lack of certification in and of itself did not convert an otherwise legal arrest into an illegal one. *Id.* Therefore, Appellee was not aggrieved, as his rights were not invaded or infringed by the fact that Officer Musial lacked formal certification. *See In re T.J., supra.* Accordingly,

---

10. Because the *Pontious* Court held the defendants lacked standing, the Court declined to address the statutory interpretation issue and the suppression issue. *Id.*

Appellee did not have standing to challenge the legality of his arrest on this ground.[11] *Compare Kiner, supra* (holding off-duty state police officer who was not in uniform lacked statutory authority to arrest defendant for violation of that title, where motor vehicle code had specific "uniform requirement" for that purpose). Appellee is not the proper person to challenge the authority of Officer Musial to serve without certification; such a challenge must be instituted in a direct and appropriate proceeding for that purpose and cannot be made collaterally. *See Pontious, supra* at 3, 4. *See also In re Hickson, supra.*

¶ 17 Moreover, the text of Sections 2161, 2162 and 2167 of Title 53, in effect at the time of Appellee's arrest, reads in pertinent part:

§ 2161. Establishment of program and scope of subchapter

(a) Municipal police officers' education and training program.—The commission shall establish a municipal police officers' education and training program in accordance with the provisions of this subchapter. The administration of this program shall be the responsibility of the Pennsylvania State Police.

53 Pa.C.S.A § 2161(a). Section 2167 provides:

§ 2167. Police training

(a) General rule.—All municipalities of this Commonwealth or groups of municipalities acting in concert and all colleges and universities shall be required to train all members of their police departments pursuant to this subchapter prior to their enforcing criminal laws, enforcing moving traffic violations under Title 75 (relating to vehicles) or being authorized to carry a firearm.

(b) Ineligibility for compensation.— Any person hired as a police officer[12] shall be ineligible to receive any salary, compensation or other consideration for the performance of duties as a police officer unless the person has met all of the requirements as established by the commission and has been duly certified[13] as having met those requirements by the commission.

(c) Penalty.—Any person who orders, authorizes or pays as salary to a person in violation of the provisions of this subchapter commits a summary offense and shall, upon conviction, be sentenced to pay a fine of $100 or be imprisoned for a term not to exceed a period of 30 days.

11. The proceedings on Appellee's motion to quash were truncated, and consist of one and one half pages of discussion on the background of two other cases involving Officer Musial. In fact, the court announced its intention to grant Appellee's motion based upon its decision in the two prior cases, and gave neither party any chance to argue. We disapprove of this manner of disposition, which assumes certain arguments and adverse decisions, without making a proper record. This is particularly true where the cases are not consolidated for appellate review.

12. The applicable Section 2162 provides: "Police officer." Any full-time or part-time employee of a city, borough, town, township, campus police or university police or county

police department assigned to criminal or traffic law enforcement duties; any deputy sheriff of a county of the second class; and, for the purpose of training only, security officers of a first class city housing authority. The term excludes persons employed to check parking meters or to perform only administrative duties and auxiliary fire police. 53 Pa.C.S.A § 2162 (Definitions).

13. The applicable Section 2162 provides: "Certification." The assignment of a certification number to a police officer after successful completion of a mandatory basic training course or receipt of a waiver of basic training from the commission and successful completion of mandatory in-service training. Certification is for a period of two years. *Id.*

The commission may stop payment of all funds paid or payable to municipalities under this subchapter for any violation of this subchapter. It shall notify the State Treasurer to discontinue disbursement of any State funds until a municipality is in compliance with this subchapter.

53 Pa.C.S.A. § 2167(a)-(c).[14] The objective of statutory interpretation and construction is to ascertain and effectuate the intention of the legislature. 1 Pa.C.S.A. § 1921(a). "Every statute shall be construed, if possible, to give effect to all its provisions." *Id. See also Commonwealth v. Lopez*, 444 Pa.Super. 206, 663 A.2d 746 (1995). "When construing one section of a statute, courts must read that section not by itself, but with reference to, and in light of, the other sections because there is a presumption that in drafting the statute, the General Assembly intended the entire statute to be effective." *Id.* at 748. "The basic tenet of statutory construction requires a court to construe the words of the statute according to their plain meaning." *Commonwealth v. Heberling*, 451 Pa.Super. 119, 678 A.2d 794, 795 (1996). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b).

> Generally speaking, the best indication of legislative intent is the plain language of a statute.... Under [1 Pa.C.S.A.] Section 1921(c), it is only when the words of a statute "are not explicit" that a court may resort to other considerations, such as the statute's perceived "purpose," in order to ascertain legislative intent. Consistently with the Act,

this Court has repeatedly recognized that rules of construction, such as consideration of a statute's perceived "object" or "purpose," are to be resorted to only when there is an ambiguity.

*In Re Canvass of Absentee Ballots of November 4, 2003 General Election*, 577 Pa. 231, 243, 843 A.2d 1223, 1230 (2004) (internal citations omitted). Finally, we note the maxim of statutory interpretation that the expression of one thing in a statute implies the exclusion of others not expressed. *Commonwealth v. Spotz*, 552 Pa. 499, 716 A.2d 580 (1998), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 551 (1999). "Similarly, the court may not supply omissions in the statute when it appears that the matter may have been intentionally omitted." *Id.* at 519, 716 A.2d at 590.

¶ 18 In the present case, the plain language of Section 2167(a), in force at the time of Appellee's offense, requires municipalities to train their police officers prior to allowing them to enforce criminal laws, moving traffic violations, or carrying firearms. Section 2167(a) makes no mention of certification; it just establishes a training requirement. The only section that mentions certification is Section 2167(b), which prescribes the requirements for compensation, in that a person hired as a police officer shall be ineligible to receive any salary, compensation or other consideration for the performance of duties as a police officer unless, *inter alia*, the person had been duly certified. The legislature's expression of a training requirement as a predicate to law enforcement in Section 2167(a) was to the exclusion of a certification requirement. *See Spotz, supra*. We

---

**14.** Effective March 1, 2004, Section 2167 was amended to add two new subparts. *See* Section 4 of 2003, Dec. 30, P.L. 450, No. 65, effective March 1, 2004 (giving active police officers grace period of one year to obtain formal certification). Thus, formal certification by the Municipal Police Officers' Education and Training Commission was not at the time of Appellant's offenses or even now an absolute prerequisite to performance of official duties.

agree that the certification requirement in Section 2167(b) is more than a "mere technicality," but only with respect to compensation eligibility under Section 2167(b). Although training is required prior to law enforcement under Section 2167(a), certification is not required. Therefore, Officer Musial's lack of formal certification did not affect his law enforcement authority.

¶ 19 Based on the foregoing, we hold Appellee lacked standing to challenge his criminal information on the ground that his arresting officer was not certified by the Municipal Police Officers' Education and Training Commission, Appellee's arrest was lawful, and the trial court erred in granting Appellee's motion to quash and dismissing the criminal information against him. *See Lebron, supra; Krick, supra.* Accordingly, we reverse and remand for further proceedings.

¶ 20 Order reversed; case remanded. Jurisdiction is relinquished.

¶ 21 Judge LALLY–GREEN files a concurring opinion.

LALLY–GREEN, J., Concurring.

¶ 1 I join the opinion of the majority. I write separately only to emphasize my view that a defendant may have standing to challenge the authority of his arresting officer when qualification-based requirements such as training requirements have not been met.

¶ 2 The majority applies the *de facto* doctrine discussed in *Commonwealth v. Pontious,* 396 Pa.Super. 15, 578 A.2d 1, 3–4 (1990) (*en banc*). The majority states:

In the instant case, Officer Musial had *de facto* authority to conduct a lawful arrest of Appellee. *See id.* He had completed all the necessary training for police officers in this jurisdiction. We reject the notion that the "hiring" issue in *Pontius* is distinguishable from the "certification" issue under review, for purposes of a challenge to Appellee's

arrest. The hiring provision in *Pontius* and the certification provision in the present case are both in the nature of civil service requirements. Whether Officer Musial was "certified" under 53 Pa.C.S.A. § 2167 does not substantially, directly, and immediately affect Appellee's individual constitutional rights.

Slip Opinion at 10–11.

¶ 3 I fully agree with that statement, so far as it goes. I would add that, in my view, *Pontius* should not be interpreted to deny standing in all cases where an arresting officer has *de facto* authority to enforce the law. I believe that a defendant might have standing when his challenge to the officer's authority is more than a "technical defect in title to office." In my view, therefore, if training rather than certification were the issue in this case, *Pontious* would not apply to deny a defendant standing to challenge an officer's actions as invading the defendant's individual rights. *See, Commonwealth v. J.H.,* 563 Pa. 248, 759 A.2d 1269, 1271 (2000); *Commonwealth v. Crawford,* 789 A.2d 266, 269–70 (Pa.Super.2001). *See also, Commonwealth v. Carter,* 537 Pa. 233, 643 A.2d 61, 68 (1994), *cert. denied,* 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995).

¶ 4 In Appellee's case, the officer's technical defect (*i.e.,* lack of certification) was not qualification-based, as the officer had received the requisite training. On the other hand, had the officer failed to complete the requisite training requirements, the defect would have been qualification-based. Then, I suggest, *Pontius* would not necessarily preclude Appellant from having standing.

¶ 5 For these reasons, I join the majority and write to amplify my understanding of the majority opinion.